In re MIDTOWN CONTRACTING CO.

(District Court, S. D. New York. December 26, 1916.)

1. BANKRUPTCY ⊚⟶288(1)—JURISDICTION OF COURT—SUMMARY PROCEEDINGS.

Where the right of a trustee to property in the possession of a third person depends entirely upon a question of law, the court of bankruptcy has jurisdiction to determine such right in a summary proceeding on petition of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⊚⟶288(1).]

2. BANKRUPTCY ⊚⟶188(1)—PROPERTY PASSING TO TRUSTEE—MATERIALS OF BUILDING CONTRACTOR.

A provision of a building contract that in case of default on the part of the contractor the owner shall be entitled to retain and use all materials brought on the ground by the contractor is not enforceable against the trustee in bankruptcy of the contractor as to materials not owned by him or even in existence at the time the contract was made.

[Ed. Note.—For other cases, see Bankruptcy; Cent. Dig. §§ 286–289, 291, 293, 294; Dec. Dig. ⊚⟶188(1).]

In Bankruptcy. In the matter of the Midtown Contracting Company, bankrupt. On review of order of referee. Reversed.

David W. Kahn, of New York City, for the motion.

Lamar Hardy, Corp. Counsel, of New York City (Joseph L. Pascal, of New York City, of counsel), opposed.

MAYER, District Judge. This is the review of an order of the referee, made on December 15, 1916, denying the petition of the trustee to require the board of education of the city of New York to turn over to him certain building materials and equipment brought on the grounds of the Evander Childs High School, in the borough of the Bronx, city of New York, by the bankrupt, or on its behalf, which materials and equipment remained on the said grounds on the date

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the filing of the petition in bankruptcy and the appointment of the present trustee as receiver.

The sole ground upon which the referee denied the trustee's petition was that the matter was not one within the summary jurisdiction of the court and that the trustee should pursue his remedy by way of plenary action or suit. The facts are as follows:

[1] The board of education and the bankrupt entered into a contract on October 13, 1914, for the general construction of the Evander Childs High School, in the borough of the Bronx, city of New York, for an estimated sum, and under this contract there was paid to the contractor in installments a certain part of this sum. Before the work called for by the contract was completed, the bankrupt defaulted thereunder. This contract contained, among others, the following clause or provision, known as "Q":

"(Q) If the work to be done under this contract shall be abandoned by the contractor, or if this contract shall be assigned, or the work sublet by him, otherwise than is herein specified, or if the contractor shall at any time refuse or·neglect to supply a sufficiency of workmen· and materials of the proper skill and quality, or shall fail in any respect to prosecute the work required by this contract with promptness and diligence, or shall omit to fulfill any provisions herein contained, or if at any time the superintendent of school buildings shall be of the opinion, and shall so certify in ·writing to the committee on buildings, that the performance of the contract is unnecessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions or covenants of this contract or specifications, or is executing the same in bad faith or not in accordance with' the terms thereof, or if the work be not fully completed within the time named in the contract for its completion, the committee on buildings shall notify the contractor to discontinue all work, or any part thereof, under this contract, by a written notice, signed on behalf of said committee by its chairman or acting chairman, to be served upon the contractor, either personally or by leaving said notice at his place of residence or business, or with his agent in charge of the work, or with any employé found on the work, or by notice, letter, or other communication addressed to the contractor deposited in a post-paid wrapper in any post-paid box regularly maintained by the post office, and thereupon the contractor shall discontinue the work or such part thereof, and *the board of education shall thereupon have the power to contract for the completion of the contract in the manner prescribed by law, or to place such and so many persons as it may deem advisable, by contract or otherwise, to work at and complete the work herein described, or such part thereof, and to use such materials as he may find upon the line of the work and to procure other materials for the completion, so as to fully execute the same in every respect,* and the cost and expense thereof at the! reasonable market rates shall be a charge against the contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of th'e amount to be paid under this contract; and the contractor shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to him, and shall forfeit all claim to any moneys retained; *and no molds, models, centers, scaffolding, planks, horses, derricks, tackle, implements, power plants, or building material of any kind belonging to or used by the contractor shall be removed so long as the same may be wanted for the work.* In case the contractor shall at any time, in the opinion of the superintendent, neglect to faithfully carry on and perform any portion of the work required by this contract, whereby safety and proper construction may be endangered or which may not be subsequently rectified, or· whereby damage and injury may result to life and property, or either, then, and in every such' case, the superintendent shall have the right forthwith and without notice to the contractor to enter into and upon the work, and to make good any and all imperfect work and

material and deficiencies arising by reason of such neglect; the expense and cost thereof shall be a charge against the contractor to be deducted from any payment or moneys which may be due or subsequently become due under this contract; and the opinion and decision of the superintendent of school buildings in all instances which may arise in the manner aforesaid shall be final, conclusive, and binding upon the contractor. But no action so taken by the superintendent of school buildings shall release the contractor from any and all consequences and damages which may have arisen, or may arise, owing to such neglect, whether willful or by omission; and the contractor covenants and agrees to hold the party of the first part harmless against and from any and all suits at law and all and every damages and loss whatsoever arising therefrom. Should the contractor fail to complete the contract, he shall forfeit all claim for compensation."

The procedure provided under the contract was conformed with, and appropriate resolutions were passed by the board of education, and due notices given, with the result that the board of education took possession of the materials upon the site of the work for the purposes provided for in the contract, and still has possession of the materials and claims the right to use the same for the purposes provided in the clause Q.

The petition in bankruptcy was filed on or about August 16, 1916, and a receiver appointed. Later there was an adjudication, and the receiver was selected as trustee. It was conceded before the referee, and is conceded here, that the board of education took possession of the materials in controversy prior to the filing of the petition in bankruptcy. It was also conceded that none of the materials in controversy was brought on the high school grounds before the contract of October 13, 1914, was entered into, and that none of the said materials was in existence on the date of the making of the said contract.

The trustee moved for an order restraining the board of education from interfering with the possession of the trustee, and this motion was denied on the ground that the board of education was amply solvent. The court pointed out that the trustee might sue in trover or might apply to the referee for a summary order. There was nothing in the court's brief memorandum to indicate that a summary order was not the proper remedy, if the conceded facts justified.

From what has been above outlined, it is apparent that there is no dispute of fact between the parties, and whether or not a summary order is the proper relief depends solely upon whether the question involved is one of fact or one of law. The Circuit Court of Appeals for the Second Circuit has indicated clearly that the Yorkville Coal Company Case, 211 Fed. 619, 128 C. C. A. 570, does not apply where the sole question is one of law. Matter of R. & W. Skirt Co., 222 Fed. 256, 138 C. C. A. 67.

The principle of Matter of R. & W. Skirt Company, supra, has been recently reiterated in Alco Film Corporation v. Alco Film Service of Minnesota, 234 Fed. 55, affirmed 234 Fed. 55, at page 58, —— C. C. A. ——. I am of opinion, therefore, that the referee was clearly wrong in his denial of the trustee's application, on the ground that there was not jurisdiction by way of summary proceeding.

[2] This conclusion requires a consideration on the merits of the question involved. This very clause Q was under consideration in

Titusville Iron Co. v. City of New York, 207 N. Y. 203, 100 N. E. 806. Counsel for the board of education seeks to draw some distinctions between that case and the case at bar, but there is not any distinction requiring discussion, except as to time of possession; it appearing that in the Titusville Iron Co. Case the receiver in bankruptcy obtained possession first, while in the case at bar the board of education obtained possession first.

I am unable to see that the date of possession makes any difference in principle where the chattels were not in existence or in possession of the contractor at the time the contract was made. Chief Judge Cullen, in the Titusville Iron Company Case, discussed on principle the basic propositions as to title. He said:

"At the time of the execution of the contract Hillman had no title to the property, the subject of this suit, nor does it appear even that the property was then in existence. Therefore he could create no lien thereon cognizable at law, whether by way of mortgage, pledge, or otherwise. * * * Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. McCaffrey v. Woodin, 65 N. Y. 459 [22 Am. Rep. 644]; Kribbs v. Alford, 120 N. Y. 519 [24 N. E. 811]. But it seems settled law, at least in this state, that they will not be enforced as against creditors. Rochester Distilling Co. v. Rasey, 142 N. Y. 570 [37 N. E. 632, 40 Am. St. Rep. 635]; Zartman v. First Nat. Bank of Waterloo, 189 N. Y. 267 [82 N. E. 127, 12 L. R. A. (N. S.) 1083]."

This opinion was concurred in by Judges Haight, Vann, and Willard Bartlett, and Judges Chase and Hiscock concurred in the result. I do not see how any other conclusion could have been arrived at after what the court had said in Zartman v. First Nat. Bank of Waterloo, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083. The opinion in the Titusville Iron Company Case so fully sums up the law and discusses previous authorities that further comment in unnecessary.

The order of the referee is therefore reversed, and the trustee is entitled to the summary order asked for by him. Submit order on one day's notice.