### In re P. J. SULLIVAN CO., Inc.

(District Court, N. D. New York. January 4, 1918.)

1. PLEDGES ⬅11—VALIDITY—TRANSFER OF POSSESSION.

Transfer of possession to the pledgee is necessary to create a valid pledge, and the possession must be actual, and not merely constructive, unless from the nature of the case the property is not susceptible of manual delivery; hence, where a contracting company covenanted to save the surety on its bond harmless, and for better protection of the surety did assign, transfer, and convey to the surety all its right, title, and interest, tools, equipment, and materials of any nature which the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

company might have upon the work, or in or about the site thereof, including materials purchased for or chargeable to the contract, which might be in process of construction, or stored elsewhere, or in transportation to the site, the agreement was invalid as a pledge, the contracting company at all times retaining possession of such materials, tools, and equipment.

2. CHATTEL MORTGAGES ⬠18, 188(1)—FRAUDULENT CONVEYANCES ⬠142—PLEDGES ⬠7—ENFORCEMENT—CREDITORS.

In the state of New York, mortgages or contracts pledging subsequently acquired property, though void at law, will be enforced in equity, as between mortgagor and mortgagee, as agreements to give liens, and also as against purchasers with notice, but they will not be enforced against creditors.

3. COURTS ⬠365—PRECEDENCE—DECISIONS.

The federal courts are, as to questions of liens created either by chattel mortgage or pledge, controlled by the decision of the highest court of the state where the case arises.

4. CONTRACTS ⬠147(1)—CONSTRUCTION—INTENT.

While, in construing a contract, it should be given that meaning which the parties evidently intended, a court is not justified in adding provisions to a contract which the parties themselves omitted, for the purpose of doing what the court may deem justice.

5. PLEDGES ⬠11—VALIDITY—DELIVERY OF POSSESSION.

A contracting company, which became bankrupt, entered into a contract with a high school commission for the furnishing and installing of heating and ventilating apparatus for a high school building, which was being erected or to be erected, which provided that if the work to be done under the agreement should be abandoned by the company, or if the contract should be assigned, or the work sublet other than as specified, or if at any time the architect should be of the opinion and shall certify that performance of the contract was unnecessarily or unreasonably delayed, and that the company was violating any of the conditions or covenants, the commission should have the power to require the company to discontinue all work on three days' written notice, and that the commission might complete the contract in the manner provided by law, charging the company with the expenses, materials, and labor, etc., which should be deducted from the contract price. The contracting company, which agreed to save a surety on its bond harmless, for that purpose executed an agreement reciting the assignment, transfer, and conveyance to the surety of all its title and interest in and to tools, equipment, and materials placed upon the site of the work, or which might be purchased for the work. *Held*, that the mere placing of tools and equipment on the site of the building did not, on the theory that the contract with the commission was one of pledge, give the commission title to the property superior to the trustee in bankruptcy of the company, even though it is not necessary in every case that the pledgee himself take possession, for, as the company remained in possession until bankruptcy, and had complete control of all of the property, it could not under any theory be deemed that the commission had possession.

6. PLEDGES ⬠11—VALIDITY—POSSESSION.

In such case, the alleged pledge cannot be treated as valid, in view of decisions applicable to stockbrokers; the relation in that case being a peculiar one, and the possession of shares of stock by a broker for his principal being entirely different from the possession of the contracting company for the commission.

7. CHATTEL MORTGAGES ⬠194—VALIDITY—POSSESSION.

An agreement by contractor, transferring to the surety on its bond its title and interest to equipment used in the work and materials placed on the site, etc., as security, is not good as a chattel mortgage against the

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

creditors of the contractor, where possession was not delivered and the contract was not registered: Lien Law N. Y. (Consol. Laws, c. 33) § 230, declaring that every mortgage or conveyance intended to operate as a mortgage of goods and chattels, which is not accompanied by an immediate delivery and followed by an actual and continued change of possession, is void as against creditors of the mortgagor and subsequent purchasers and mortgagees in good faith, unless a mortgage or a true copy is filed as directed.

8. PLEDGES ⊚⊸11—POSSESSION—"DELIVERY OF POSSESSION."

In the case of pledge of bulky property, it is not necessary that there be an actual or physical handling, but some act or acts surrendering dominion on one part and transferring it to the pledgee on the other must be shown; it being sufficient in case of goods stored in a warehouse to deliver the warehouse receipts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delivery; First Series, Delivery of Possession.]

9. BANKRUPTCY ⊚⊸152—TRUSTEE—APPOINTMENT.

The title of a trustee in bankruptcy, on his appointment and qualification, relates back to the date of adjudication.

10. PLEDGES ⊚⊸23—CREDITORS—RIGHTS OF.

A judgment creditor, whose execution has been returned unsatisfied, has a specific lien on or right to the property of the judgment debtor, subject to an agreement to pledge superior to the right of pledgee, where the pledgee has not taken possession.

11. BANKRUPTCY ⊚⊸205—TRUSTEES—RIGHTS OF—PLEDGEES.

Bankr. Act July 1, 1898, c. 541, § 47, 30 Stat. 557 (Comp. St. 1916, § 9631), declares that trustee as to all property in the custody or coming into the custody of the bankruptcy court shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, and as to all property not in the custody of the bankruptcy court shall be deemed vested with the rights and remedies of a judgment creditor holding an execution duly returned unsatisfied. Section 67a (Comp. St. 1916, § 9651) declares that claims which for want of record or other reasons would not have been valid liens against the creditors of the bankrupt shall not be liens against his creditors, while section 67e declares that all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition and while solvent, and which were void against the creditors of such debtor by the laws of the state in which the property is situate, shall be deemed void against the creditors of such debtor if he be adjudicated a bankrupt. The bankrupt, before adjudication, contracted with a school commission to install heating and ventilating apparatus in a school building. It also agreed, for the purpose of securing the surety on its bond, to assign to it all its right, title, and interest in the equipment and material placed upon the site for installation of the heating apparatus or order therefor. Prior to bankruptcy neither the commission nor the surety had possession of property or equipment placed on the site by the bankrupt, though after the adjudication the commission, under authority of the contract, notified the bankrupt to discontinue work, took possession of material on the premises, and completed the work. Tools and equipment were stored. *Held*, that as the trustee's right related back to the time of adjudication, and he had all the rights of a judgment creditor whose execution was returned unsatisfied, neither the surety nor the commission was entitled to the property or equipment, for the contracts, not having been recorded, were not good as chattel mortgages, and the agreement of pledgee was unavailing, the pledgee not having been inducted into possession before bankruptcy, for the possession taken by the commission after bankruptcy did not divest the rights of the bankrupt's creditors, this being true both as to the equipment

which the bankrupt owned when it entered into the contract and the materials subsequently acquired.

12. PLEDGES ⬤⟹11—POSSESSION—AGREEMENT.

In such case, where it was the understanding of the parties that the contractor should possess and exercise dominion over the tools, equipment, and materials, and such possession was absolutely essential to it in performing the contract, it cannot be deemed that, prior to bankruptcy, either the surety or the commission had possession of the bankrupt's property.

In Bankruptcy. In the matter of the bankruptcy of P. J. Sullivan Company, Incorporated. Application by H. A. Whiting, trustee in bankruptcy, and Frank B. Hodges, ancillary receiver, for an order or decree directing the Vocational High School Commission in the city of Syracuse to deliver to the trustee and receiver certain property, or in default thereof to pay the value of such property. The Fidelity & Deposit Company of Maryland appeared and answered the petition, praying that it be dismissed, and that the property in question be adjudged to have been rightfully obtained and used, and that certain materials, tools, and equipment not used or retained should be adjudged to belong to it under an agreement with the bankrupt. Petition granted.

This is an application by H. A. Whiting, trustee in bankruptcy of the P. J. Sullivan Company, Incorporated, now bankrupt, and Frank B. Hodges, ancillary receiver of said bankrupt, for an order or decree directing the vocational high school commission in the city of Syracuse, appointed under and by virtue of chapter 299 of the Laws of 1914, and which went into effect April 11, 1914, and the city of Syracuse, to deliver to said trustee and receiver, one or both, the property mentioned and described in the petition herein, or in default thereof to pay to said trustee and receiver, one or both, the value of said property, alleged to be $8,882.89.

The said city of Syracuse and said commission answer the petition, and claim that the property belonged to and was in the possession of the city or board of commissioners, one or both, and was rightfully and lawfully withheld and used by them, and that neither the city nor the said commission are liable for the value thereof, but of course ask that the petition be dismissed.

The Fidelity & Deposit Company of Maryland appears and answers the petition, and prays that the petition be dismissed and that it be adjudged that the property mentioned in the petition taken and used or in the possession of the board of commissioners and the city of Syracuse and retained for use by the commissioners, and the proceeds thereof, be adjudged to have been rightfully retained and used, and that certain tools, equipment, and materials not used or retained for use by the board of commissioners and the said city be adjudged to belong to and to be the property of the Fidelity & Deposit Company of Maryland under an agreement between it and the said now bankrupt company. The matter comes to this court on an agreed state of facts.

Costello, Burden, Cooney & Walters, of Syracuse, N. Y., for trustee and receiver.

Stewart F. Hancock, of Syracuse, N. Y. (E. L. Robertson, of Syracuse, N. Y., of counsel), for city of Syracuse and Vocational High School Commission.

Gannon, Spencer & Michell, of Syracuse, N. Y., for Fidelity & Deposit Co. of Maryland.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RAY, District Judge (after stating the facts as above). On the 8th day of December, 1916, a petition was filed in the United States District Court for the District of Massachusetts, praying that the P. J. Sullivan Company, Incorporated, be adjudged a bankrupt, and pursuant thereto an adjudication was duly made, and thereafter, and on or about January 5, 1917, the petitioner Henry A. Whiting was duly appointed trustee of the estate, etc., of said bankrupt, and he duly qualified. In the meantime, and on December 13, 1916, for the protection and preservation of the property of said alleged bankrupt situate in the Northern district of New York, on petition of certain creditors, Frank B. Hodges, of the city of Syracuse, was appointed receiver of the estate of said bankrupt situate in the Northern district of New York. He qualified as such and has not been discharged.

In 1914, chapter 299, Laws of 1914, state of New York, was enacted and became a law April 11, 1914, with the approval of the Governor. Under the provisions of said act certain gentlemen of the city of Syracuse were appointed and qualified as a board of commissioners for the purposes set forth in said act, and were thereby authorized and empowered to erect, equip, and furnish a vocational high school building in said city of Syracuse. On or about the 17th day of February, 1915, the said board of commissioners, pursuant to the said act of the Legislature and the amendments thereto, entered into a contract in writing with the said P. J. Sullivan Company, Incorporated, for the furnishing and installing of the heating and ventilating apparatus for said vocational high school building, and which was being erected or to be erected on lands belonging to the said city in said city of Syracuse. This contract, inter alia, provided as follows:

"If the work to be done under this agreement shall be abandoned by the contractor, or if this contract shall be assigned or said work sublet by him, other than as herein specified, or if at any time the architects shall be of opinion and shall so certify in writing to the board of commissioners that the performance of this contract is unnecessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions or covenants of this contract, or executing the contract in bad faith, the board shall have the power to require the contractor to discontinue all work or any part thereof under this contract by a written three (3) days' notice to be served upon the contractor, either personally or by leaving such notice at his residence or with his agent in charge of the work; and thereupon the contractor shall discontinue such work or such part thereof as the said board may designate, and the said board shall thereupon have the power to contract for the completion of the work in the manner prescribed by law, and to place such and so many persons, and obtain by purchase or hire such animals, carts, wagons, tools, and plant as the said board may deem advisable, to work at and to be used to complete the work herein described, or such part thereof as the said board may deem advisable, and to procure materials for the completion of the same, and charge the cost and expense thereof to the contractor; and the expense so charged shall be deducted and paid by the board out of such moneys as either may be due or at any time thereafter become due to the contractor under and by virtue of this agreement or any part thereof; and in case such expense shall exceed the sum which would have been payable under this contract shall pay the amount of such excess to the board, and in case such expense shall be less than the sum which would have been payable under this contract if the same had been completed by the contractor, then the board shall pay the balance to the contractor; and when any particular

part of the work is being carried on by the board by contract or otherwise, under the provisions of this clause of the contract, and the contractor agrees to continue the remainder of the work in conformity with the terms of this agreement, and in such manner as in no wise to hinder or interfere with the persons or workmen employed as above provided by the said board, by contract or otherwise, to do any part of the work or to complete the same under the provisions of this clause of the contract."

On or about the 30th day of July, 1915, the said P. J. Sullivan Company, Incorporated, entered into a contract or agreement with the Fidelity & Deposit Company of Maryland, for the purpose of inducing it to become surety for said company on its bond for the faithful performance of its contract with the said board of commissioners and which contract and agreement inter alia contained the following provision:

"In further consideration of the company becoming surety as above applicant hereby covenants and agrees to indemnify the company and save it harmless against all loss, cost, damage, charge, and expense that may accrue to it, whether sustained or incurred by reason of any act, default, or neglect of the applicant, or on account of claims made under or in connection with said bond, or any extension or continuation thereof, applicant agreeing to repay to said company all such loss, cost, damage, charge, and expense, including the fees or other compensation and expense of any and all attorneys and agents employed by the company to investigate or adjust such claim or to defend any suit in which the company is directly or indirectly interested, and for the better protection of the said company applicant does as of the date hereof hereby assign, transfer, and convey to the said company all the right, title, and interest of the applicant in and to all the tools, plant, equipment, and materials of any nature and description that it may now or hereafter have upon said work or in, on, or about the site thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction or storage elsewhere or in transportation to said site, hereby assigning and conveying also all its rights in and to all said contracts which have been or may hereafter be entered into and the materials embraced therein, and authorizing and empowering said company, its authorized agents or attorneys to enter and take possession of said tools, plant, equipment, materials, and subcontracts, and to enforce, use, and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect as of the date hereof, should the applicant fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in the event of any default on its part under the said contract."

The said Fidelity & Deposit Company of Maryland did become surety on the bond of said contracting company and at the time of entering into said contract with said commission the P. J. Sullivan Company, Incorporated, filed with the vocational high school commission the bond executed by the Fidelity & Deposit Company of Maryland for the faithful performance of said contract between the said contractor and the said commission.

After entering into the said contract with the said board of commissioners of the vocational high school and the filing of said bond the said P. J. Sullivan Company, Incorporated, purchased certain supplies, fixtures, and materials and brought them upon the site of the said vocational high school in the city of Syracuse to be used in carrying out and completing said contract between it and said board of commissioners.

December 8, 1916, at the time the petition in bankruptcy was filed, the said P. J. Sullivan Company, Incorporated, had not completed its contract with the board of commissioners aforesaid, and thereafter neither the trustee in bankruptcy nor the receiver did anything toward carrying out or completing the contract. On that date, December 8, 1916, the above-mentioned supplies, fixtures, and materials remained at the site of said school and were suitable for use in carrying out and completing the said contract.

December 28, 1916, the said board of commissioners served on the receiver and the P. J. Sullivan Company, Incorporated, a notice that pursuant to the opinion and certificate of the architects of said vocational high school the board of commissioners required the contractor and its successors or assigns to discontinue within three days thereafter all work under the contract hereinbefore mentioned. This notice was authorized by a resolution of the said board adopted December 22, 1916.

January 9, 1917, there was mailed to the said bankrupt company, its receivers, and to the said bonding company a resolution of the board of commissioners to the effect that the board had provided by resolution for the advertising and letting of the contract for the completion of the work covered by the contract of the P. J. Sullivan Company, Incorporated, and also giving notice to all who had filed liens, and on the same day copies of resolutions were served by mail on the bankrupt, its receivers, and the bonding company, all to the effect that the commission had decided that the work was unnecessarily and unreasonably delayed and that the contractor be notified and directed to discontinue work and notice given the surety company and that the board of commissioners advertise for proposals for the completion of the work in accordance with the original plans, etc. This resolution referred to was adopted January 4, 1917.

The supplies, fixtures, and materials hereinbefore mentioned remained upon the site of the said vocational high school building up to January 20, 1917, and from that time and thereafter were substantially all used by the said board of commissioners of the said vocational high school in carrying out and completing that portion of the vocational high school building included in said contract with said P. J. Sullivan Company, Incorporated. The supplies, fixtures, and materials so used or retained for use by the board of commissioners were of the value of $6,500.

The cost to the board of commissioners of completing said contract exclusive of any allowance for the supplies, fixtures, and materials used as aforesaid and retained for use will be in excess of the balance which would have been payable to the P. J. Sullivan Company, Incorporated, now bankrupt, for the completion of said contract under the terms thereof.

Prior to the commencement of this proceeding the said receiver and the said Whiting, as trustee, demanded of the city of Syracuse and of the vocational high school commission the said supplies, fixtures, and materials, or in case of their nonreturn their value, but such demand

was refused by both the city of Syracuse and the vocational high school commission.

On the 8th day of December, 1916, when said petition in bankruptcy was filed, none of said supplies, fixtures, and materials had been installed in, nor had any of them become a part of, the said building, nor was the same or any part thereof included in any estimate made by the architect in charge of said building, nor had same or any part thereof been paid for in cash to the said bankrupt, nor has same been paid for to the trustee or receiver of the bankrupt.

After entering into said contract with the board of commissioners of said vocational high school of the city of Syracuse, the said P. J. Sullivan Company, Incorporated, now bankrupt, brought upon the site of said school building certain tools and equipment and materials owned by the said contracting company other than the property above mentioned for use in performing said contract, and such tools, equipment, and materials remained upon the site of said school at the time of the filing of the petition in bankruptcy on the 8th day of December, 1916, and at the time of the appointment of said trustee and receiver herein. The said receiver, Frank B. Hodges, removed all of these tools and all of such equipment and materials except certain I-beams to a storehouse in the city of Syracuse, where same now remain in storage. Such tools and equipment were so removed without the consent of said Fidelity & Deposit Company of Maryland. No claim is made in this proceeding against the city of Syracuse or the board of commissioners for said tools, equipment, and materials last mentioned. The Fidelity & Deposit Company of Maryland consented to the use of the supplies, fixtures, and materials taken by the city of Syracuse or said board of commissioners and used or retained for use in the completion of said vocational high school building.

The contract between the vocational high school commission and the now bankrupt and the said bond executed by the said Fidelity & Deposit Company of Maryland were filed in the office of the clerk of the vocational high school commission, but were not filed with any other public officer or in any other place. The application for bond or agreement made between the Fidelity & Deposit Company of Maryland and the said P. J. Sullivan Company, Incorporated, was not filed in any public office or with any town or county clerk. The said P. J. Sullivan Company, Incorporated, after entering into the agreement with the said Fidelity & Deposit Company of Maryland and after entering into said contract with the vocational high school commission contracted debts, some of which were unpaid at the time of filing the petition in bankruptcy. The said P. J. Sullivan Company, Incorporated, was adjudicated a bankrupt on the same day the petition was filed.

The city of Syracuse and the said board of commissioners above mentioned claim that all the property taken and used and retained for use in the completion of said vocational high school building after the bankruptcy, and which was found on the site of the school was either theirs absolutely, or that they had such a lien and claim thereon and right thereto under the terms of the contract above mentioned that they had the right to retain and use same without paying therefor in

cash, while the receiver and trustee in bankruptcy claim that neither the commission nor the city had any right thereto or claim thereon, good as against either the receiver or the trustee in bankruptcy, inasmuch, first, as it was after-acquired property, and not owned by the P. J. Sullivan Company, Incorporated, at the time the contract was entered into, and that it could not be mortgaged or pledged as against creditors and the trustee in bankruptcy; and, second, that, if subject to mortgage, the mortgage or contract was never filed in the proper office, and that it was not legally pledged, inasmuch as the property was never delivered to the alleged pledgee or pledgees, the city of Syracuse or said commission.

The Fidelity & Deposit Company of Maryland claim that the other property hereinbefore mentioned belongs to it under the terms of its contract and agreement with the P. J. Sullivan Company, Incorporated, while the receiver and trustee claim that the contract, if treated as a mortgage, is invalid as against the trustee in bankruptcy, for the reason it was never properly filed, and that, treating it as a pledge, the property was never delivered to the pledgee or pledgees, the city of Syracuse and the commission above mentioned, or either of them.

All of the property hereinbefore mentioned was taken upon the site of the vocational high school building by the contracting company to be used by it in constructing and erecting the building. The materials mentioned were to be incorporated in the building as a part thereof, and in point of fact were suitable for that purpose. The tools, implements, etc., last mentioned, were taken upon the premises to be used in erecting and constructing the building, but were not to be incorporated therein. The city of Syracuse owned the lands upon which the building was being and was to be erected. Under the contract the P. J. Sullivan Company, Incorporated, had the right to go thereon and remain thereon for the purpose of erecting the said building, or the part thereof it was to construct, and to take its materials thereon.

There is no claim or pretense that any of the property first mentioned was examined, accepted, pronounced satisfactory, or turned over, either to the city or to the commission. After the contract was made the now bankrupt purchased it and became the owner thereof, and took it upon the site of the building for the purpose of incorporating it into the building and making it a part thereof. Neither the city, nor the commission did anything whatever in regard thereto until after the bankruptcy. This property was not included in any estimate to be paid, or included in any estimate and paid for in whole or in part by either the city or the commission.

As to the other property last mentioned and actually taken by the receiver, and also as to the I-beams not taken away by the receiver, it was taken upon the grounds to be used in erecting the building, but the Fidelity & Deposit Company of Maryland never did anything in regard thereto. It never had any possession thereof, unless taking it upon the site of the school constituted a delivery of possession to the Fidelity & Deposit Company of Maryland. As to the property first mentioned and taken upon the site of the building for the purpose of being used in and incorporated into the building in process of erection

as a part thereof, it was never delivered to either the city or the commission, unless the taking of it upon the site of the building for the purpose mentioned constituted a delivery to the city or to the commission, or to both.

I fail to find anything in the contract between the city of Syracuse and the commission, either or both, on the one part, and the P. J. Sullivan Company, Incorporated, on the other part, which purports to transfer or convey or pledge the property mentioned, or any of it, to the city or to the commission, either or both, absolutely or by way of security for the performance of the contract or for any other purpose. I fail to find anything in that contract which creates even an equitable lien on the property mentioned or any of it.

[1-3] In the agreement between the surety, said Fidelity & Deposit Company of Maryland, and the P. J. Sullivan Company, Incorporated, we do find a provision of transfer to the Fidelity & Deposit Company of Maryland to secure and indemnify it for executing the bond. This contract is by way of and must operate either as a chattel mortgage or as a pledge. As the contract was not filed, and there was no change of possession of the property—that is, no transfer of possession—to the Fidelity & Deposit Company of Maryland, it cannot claim the property or any right thereto as against the receiver and trustee in bankruptcy. The contract is invalid as a chattel mortgage for want of filing. It cannot operate as a valid pledge of the property as possession was never transferred to the Fidelity & Deposit Company of Maryland. There was no agreement that the Fidelity & Deposit Company of Maryland should hold for the city or the commission, or that either the commission or the city should take and hold the property for the Fidelity & Deposit Company of Maryland. Neither was the agent of the other for any such purpose. After the bankruptcy the Fidelity & Deposit Company of Maryland consented that the city and the commission, one or both, take the property (I am not now speaking of that taken by the receiver), and use it in completing the building; that is, in completing the contract made by the P. J. Sullivan Company, Incorporated. If the Fidelity & Deposit Company of Maryland had the possession of the property and the right thereto as against the trustee in bankruptcy and the receiver, then it could confer that right upon the commission and the city, either or both; but how did the Fidelity & Deposit Company of Maryland gain such right? This was after-acquired property, and even if there was a qualified or mixed possession of such property delivered to the city or the commission, when the contracting company became the owner thereof and took it upon the school site, how or under what arrangement did that possession inure to the benefit of the surety of the contractor? In Titusville Iron Co. v. City of New York et al., 207 N. Y. 203, 100 N. E. 806, the Court of Appeals of this state expressly held that mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. But, says the court, it is settled law in this state (New York) that they will not be enforc-

ed as against creditors. Transfer of possession to the pledgee is necessary to create a valid pledge, and the possession must be actual, not merely constructive, unless from the nature of the case the property is not susceptible of manual delivery and possession. It is unnecessary here to recite the facts of that case. They are so similar to the facts appearing here as to make it a decisive authority.

In a companion to the instant case just decided by me, while the facts differ somewhat, I have stated the facts in the Titusville Case and need only refer to that decision.

Duplan Silk Co. v. Spencer, 115 Fed. 689, 695, 53 C. C. A. 321, was cited by Chase, J., in the Titusville Iron Co. Case as sustaining his dissent from the second ground upon which the decision in the Titusville Case was made to rest. In New York there can be no valid pledge without delivery of the property pledged to the pledgee. The Duplan Silk Co. Case arose in the state of Pennsylvania, and in the state of Pennsylvania a valid pledge of personal property may be made without delivery of the property pledged. In re Twining (D. C.) 185 Fed. 555. A mixed possession will not do in case of a pledge. Security Warehousing Co. v. Hand, 206 U. S. 415, 416, 426, 27 Sup. Ct. 720, 724 (51 L. Ed. 1117, 11 Ann. Cas. 789). In that case the court said:

"The Security Company had, of course, full knowledge that the Knitting Company in fact at least shared in the possession of the property. It was itself an actor, or it acquiesced in the arrangement under which it had, at most, but a partial possession, and even that was subject to the control of the Knitting Company."

In the instant case it cannot be contended that either the city, the commission, or the surety had the right to the possession of the property in question, or any of it, as against the P. J. Sullivan Company, Incorporated, prior to the filing of the petition in bankruptcy. Neither in fact had any right to interfere with the possession and use of that property, or any of it, so long as the contractor remained on the premises in the performance of its contract according to the terms thereof. There is not a word in either contract that gives to the city, the commission, or the surety company the right to interfere with the possession of the contractor as to property it had taken there for use in the performance of the contract. If under the contract an estimate had been made of property incorporated into the building including work done and of property delivered on the grounds by the contractor for incorporation into the building and that estimate had been accepted and money paid on the faith thereof a different question would be presented. However, nothing of the kind appears in this case. As to liens created either by chattel mortgage or pledge the United States courts are controlled by the decisions of the highest court of the state where the case arises. This is now settled law and has been settled by many decisions of the Supreme Court of the United States. If the Fidelity & Deposit Company of Maryland had filed its contract in the proper office, it is possible that the contract would have taken effect as a valid mortgage when the property was placed on the grounds; but the contract was never filed and there was no possession whatever in the Fidelity & Deposit Company of Maryland. Credi-

tors of the contractor had no notice that the surety on the bond of the contractor had any claim whatever on this personal property.

[4, 5] The Fidelity & Deposit Company of Maryland, as well as the board of commissioners and the city of Syracuse, claim that a fair construction of the contract entered into between the board and the city makes it an agreement and contract of pledge of the property taken upon the school grounds by the contracting company for the purpose of being placed in the building as a part thereof, and also of the property taken there to be used in doing the work, effective the moment the property was placed on such grounds; that when such property, even though not owned by the contractor when the agreement was made, was taken on the grounds, it was then set apart and devoted to that work, and in a sense and to an extent became a part of the building; and that, being on the grounds for that purpose, a sufficient possession, qualified, it is true, was then delivered to the owner of the building in process of construction to constitute a valid pledge of such property. It is contended that an absolute unqualified physical possession on the part of the board or city, or both, was unnecessary to the validity of the pledge.

The case of Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995, is cited as authority for this position and contention. That was a case of negotiable securities alleged and held to have been pledged by a banking firm in New York City to secure its drafts then and thereafter to be made on a foreign bank. The alleged pledgee was an English house, and for a long time the New York house had been accustomed to draw on it. The English house requested the New York firm to set aside securities for their drawing credit. The New York firm wrote that they had placed that day in a separate package in their safe deposit vaults certain securities named, the package being marked "Escrow for Account of Kessler & Co., Ltd., Manchester," and this was added:

"This escrow is intended as a protection against our [English] drawings against your good selves."

This letter was acknowledged, and stated:

"If at any time you have the opportunity of realizing these securities, or any part of them, you are at liberty to take them, and to replace them by others of equal value, though in that case we should, of course, like to see rather better quality."

In December following the English house suggested a form of certificate, viz.:

"We certify that we have specially set aside and hold for your account, on this, the 31st day of December, 1903, as security for the drawing credit which you accord us, the following securities: Name. Securities. Market Value."

This request was complied with, and the New York house not only set apart the securities, but entered them and all substitutions on their lien book. Substitutions of securities were made from time to time and the English house notified. The securities were either negotiable by delivery or indorsed in blank always. They were marked and kept as stated in the letter upon a separate shelf of the New York

firm's vault, and were never removed, except on two occasions, in 1905 and 1906, when they were taken to the office of the New York house to be examined and checked off by a representative of the English company. The business between the two houses was conducted in this way until October, 1907, when, the stability of the New York firm being in doubt, it handed over the escrow securities to an agent of the English company then in New York, and he deposited them in a safe deposit vault in the name of the English company. In November following a petition in bankruptcy was filed against the New York company, and on November 27th, the New York firm was duly adjudged bankrupt. The trustee in bankruptcy on his appointment brought suit to set aside this transfer and recover the securities or their value as an alleged preference. The Supreme Court held that there was a sufficient delivery and possession by the English house to transfer the title or such a lien as to make the right of the English house superior to the claims of the trustee in bankruptcy. The Supreme Court said:

"In the case of ordinary goods and chattels, where, for instance, a man mortgages his stock in trade as it may be from time to time, retaining possession and full power to sell and replace or not as he sees fit, it well may happen that the security fails. * * * So a general promise to give security in the future is not enough. But the present was a more limited and cautious dealing. It was confined to specific identified stocks and bonds on hand, and purported to give an absolute present right, qualified only by possible substitution, and perhaps by a right of partial withdrawal, if the remaining securities had risen sufficiently in value. It purported not to promise, but to transfer; and the subject-matter was not goods and chattels in the sense of the New York mortgage law as we understand that law to be interpreted by the New York courts. * * * There can be no doubt, as was said by the court below, that before the bankruptcy the English house had an equitable right at least to possession if it wanted it. While the phrase equitable lien may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it, we are of opinion that the agreement created such a lien at least, or in other words, that there is no rule of local or general law that takes from the transaction the effect it was intended to produce. * * * When the English firm took the securities it only exercised a right that had been created long before the bankruptcy and in good faith. Such we understand to be the law of New York, and in the absence of any controlling statute to the contrary such we understand to be what the law should be. Parshall v. Eggert, 51 N. Y. 18; National Bank of Deposit v. Rogers, 166 N. Y. 380 [59 N. E. 922]."

It is evident that here was a setting apart of specific securities for the security and protection of the English house, and that this was done by specific agreement and understanding of the parties. It was specifically agreed that the New York house should have the actual possession of the securities so set apart and kept in a specific place for the English house. The New York house was the agent or representative of the English house for that purpose, and the possession, such as it was, of the New York house, was the possession of the English house. In the instant case we have no such state of facts. First the property was owned by the P. J. Sullivan Company, Incorporated, and was in its possession and intended to be used by it in constructing the building. There was no agreement, express or implied, that this

property should be set apart as the property of the city or commission, or kept separate and distinct from other property of the contracting company. Between the city and commission and the contracting company there was no agreement whatever as to this specific property. Neither the city nor the commission made any advance upon it, or had it included in any estimate for which they paid or were to pay, and again it was property which comes within the specific terms of the New York chattel mortgage law. The chattel mortgage law of the state of New York requires that the mortgage be either recorded or filed in the proper clerk's office, or that it be accompanied by immediate possession by the mortgagee of the mortgaged property. See Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885; Zartman v. First National Bank of Waterloo, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083. In Union Trust Co. v. Wilson, 198 U. S. 530, 537, 25 Sup. Ct. 766, 768 (49 L. Ed. 1154) the court, in speaking of possession, says:

"So, again, if the goods had been in a place under the exclusive control of the company, even without the company's knowledge, they would have been in the company's possession. * * * When there is conscious control, the intent to exclude and the exclusion of others, with access to the place of custody as of right, there are all the elements of possession in the fullest sense."

In the instant case neither the city, the board, nor the Fidelity & Deposit Company of Maryland had or assumed any control of this property whatever. Neither of them had any intent to exclude the contracting company from possession, and neither of them excluded or attempted to exclude that company from its possession. The board, of course, and the city, which owned the site, had access to the place as of right; but neither of them assumed or exercised custody or dominion of the property. I am unable to see that Sexton v. Kessler has any application in the instant case.

The instant case is also widely different from National Bank of Deposit v. Rogers et al., 166 N. Y. 380, 59 N. E. 922. It is well settled that, where goods are in storage and warehouse receipts have been issued, the indorsement and delivery thereof as security for loans constitute a pledge of the goods represented thereby, valid as against attaching creditors and a trustee in bankruptcy; but such is not this case, and here there was no delivery whatever to the Fidelity & Deposit Company of Maryland, and there is no pretense that the property was so bulky or of such a character and nature as not to be capable of full and complete delivery. There is nothing in the agreement between the P. J. Sullivan Company, Incorporated, and the Fidelity & Deposit Company of Maryland, or in the agreement between the board of commissioners and the P. J. Sullivan Company, Incorporated, that the taking of the property to be used in the construction of the building, or in doing the work, upon the site of the building, shall be considered or operate as a delivery of such property to either the city or the surety.

In re Midtown Contracting Co. (D. C.) 238 Fed. 871, has been reversed by the Circuit Court of Appeals (243 Fed. 56, —— C. C. A. ——), but upon the ground that the board of education had declared the

contractor in default and had taken possession of the building material before a petition in bankruptcy was filed, and that the title of the city or board of education to such material could not be determined in a summary proceeding, except with the consent of the board.

It is elementary law that in construing a contract we are to give it that meaning which the parties evidently intended it should have; but there is no rule of law, of which I am aware, that justifies a court in adding provisions to a contract which the parties themselves have omitted to place therein, for the purpose of doing what the court may deem justice between the parties. If the owner of a building lot, contracting with a builder to erect a structure thereon, desires and intends to have a lien on the personal property and material taken upon such grounds for the purpose of being incorporated into the building, as security for the performance of the contract, it should be so stated in the contract, and apt words used to create such a lien; and if the provision is by way of security the instrument should be filed in the proper clerk's office, or else the chattel mortgage filing law should be so amended as to exclude such a contract from its provisions. If under the circumstances stated, the mere taking of materials and implements upon the site of the building constitutes a delivery sufficient to constitute a valid pledging of such property, the courts may, of course, in the absence of a statute to the contrary, so declare. Thus far in New York the courts have adhered to the rule that to constitute a valid pledge of personal property there must be a surrender of dominion, possession, and control on the one part, and an assumption of dominion and control on the other part, except in certain specific cases, of which this is not one.

I am not unmindful of the remark of Judge Cullen in deciding the Titusville Iron Case to the effect that at best the question of possession was one for the jury. I cannot see how it can be found as matter of fact that possession of material taken by a contractor upon the premises of the owner of such premises for the purpose of incorporating such material into a building which he is to erect for the owner under contract passes to such owner of the premises prior to its incorporation in the building, in the absence of specific agreement to that effect.

In this case the agreement between the P. J. Sullivan Company, Incorporated, and the Fidelity & Deposit Company of Maryland is clearly one of security, and not an out and out sale of the property mentioned to the surety company. The agreement was intended as security, and not as a sale. The surety company had neither ownership nor possession of either the material or the school site.

[6] I do not think the line of cases, Markham v. Jaudon, 41 N. Y. 235, Duel v. Hollins, 241 U. S. 523, 36 Sup. Ct. 615, 60 L. Ed. 1143, Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981, Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845, and Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047, can be applied to the instant case. So of In re Scofield Co. (Appeal of Thomas), 215 Fed. 45, 131 C. C. A. 353.

The relation of broker and customer is a peculiar one in many respects. See Markham v. Jaudon, 41 N. Y. 235, where the relation is

quite fully described. This is fully quoted and approved in the opinion of the court in Richardson v. Shaw, 209 U. S. 374, 376, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. Jones on Pledges is also quoted and approved, and he says that the broker acts in a threefold relation —in purchasing the stock he is an agent, in advancing money for the purchase he becomes a creditor, and finally in holding the stock to secure the advance made he becomes a pledgee of the stock. The customer who orders the stock purchased usually never sees or handles the stock. But, says the author, "It does not matter that the possession of the stock was never in the customer." If, when the broker purchases the stock for the customer, he acts as agent for such customer, and he also advances money in making the purchase and then becomes a creditor, and when he takes the stock into possession he holds as pledgee of such stock as security for the advance, and there can be no doubt this is so, we have a relation and obligation imposed by law peculiar to such transactions and quite different from the ordinary purchase and pledge and mortgaging of goods, wares, merchandise, and chattels. The stock becomes the property of the customer, but the broker may again sell or pledge or substitute other shares of the same kind, etc. But all this gives no warrant for holding that when a contractor agrees to erect a structure on the premises of the owner thereof for a fixed sum, and then purchases material to put in such building, and takes such material on the premises for that purpose, he thereby pledges such materials to the owner as security, or makes them a part of such structure, or that the owner of the premises becomes a pledgee in possession. And if the contractor gives a bond with surety that he will perform his contract, and gives to his surety a bill of sale of the property he is to take on the building site for use in the erection of the building as security for executing the bond, retaining, as in this case, the right to possess, exercise dominion over, and use the materials in erecting the building, or change them in his discretion and in the exercise of his judgment, has such contractor pledged the materials to such surety? Clearly there is no delivery at the time. But in Parshall et al. v. Eggert, 54 N. Y. 18, it is held that:

"One who has a contract for a pledge, ineffectual for want of a delivery of the goods, may obtain a subsequent delivery, and thus validate the pledge, even as against an intermediate creditor."

But in the instant case the Fidelity & Deposit Company of Maryland never took possession. It consented that the commission or city might take and use the materials, and the commission did. But this was weeks after the bankruptcy and the appointment of a trustee in bankruptcy.

[7-12] Conceding that, by and through what was done by the city or commission with assent of the surety, the Fidelity & Deposit Company of Maryland took possession of the materials, etc., actually used by the city or commission under the agreement with the P. J. Sullivan Company, Incorporated, and that such agreement, made in consideration of the execution of the bond referred to, was an agreement of pledge which would have become valid and effective as between the

parties when possession of the property was obtained or taken by the pledgee, was it made effective as a pledge by taking and using the property after the bankruptcy, and after the appointment of the receiver and trustee in bankruptcy, as against them, and consequently as against the creditors of the P. J. Sullivan Company, Incorporated? In New York, in case of a chattel mortgage on ordinary goods and chattels, where possession is evidence of ownership or of some right thereon, "immediate delivery" and "actual and continued change of possession" give notice to all creditors of such right, whatever it may be. Filing of the chattel mortgage is a substitute for such change of possession and the equivalent thereof. If there is no filing within a reasonable time, and no actual and continued change of possession, the mortgage is good as between the parties, but invalid as to creditors and the trustee in bankruptcy. Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885.

Section 230, Lien Law of State of New York, provides:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels or of any canal boat, steam tug, scow or other craft, or the appurtenances thereto, navigating the canals of the state, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article."

This applies to every mortgage or conveyance intended to operate as a mortgage of goods and chattels, and such is the intent of the provision above quoted in the agreement between the contractor and the surety.

In the case of an agreement to make a pledge of personal property, there is no valid pledge until possession of the property is given. It is not necessary in the case of bulky property that there be an actual physical handling, but some act or acts surrendering dominion on the one part, and transferring it to the pledgee on the other part, must be done. In the case of goods stored in a warehouse, delivery of the warehouse receipts, or written evidence of title, and giving right of possession, may be enough. If possession is not given at the time of the agreement, and the pledge perfected, such possession may be given afterwards; but it stands to reason that, "to ripen" and perfect the pledge as against creditors and a trustee in bankruptcy, the lien should be made effectual by taking possession prior to actual bankruptcy and the appointment of a trustee, whose title, on his appointment and qualification, relates back to the date of adjudication. In the case of a pledge of personal property, possession by the pledgee is required for the protection of creditors, else it has no purpose at all. Possession by the pledgee is notice of his rights whatever they may be.

Section 67a of the Bankruptcy Act provides:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

And section 67e also says:

"And all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

Section 47 of the Bankruptcy Act provides that:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

In the instant case the trustee, on his appointment and qualification, became vested with the same rights a creditor would have had under the laws of the state of New York who had obtained a lien by judgment, and execution issued and returned unsatisfied; that is, he could hold the property as against all persons asserting a lien, which was not perfected and valid as such at the time the petition in bankruptcy was filed. Such a judgment and execution creditor would have a specific lien on or right to the property of the P. J. Sullivan Company, Incorporated, not in the actual possession of the pledgee although subject to an agreement, and hence the trustee in this case has the same right. In Parshall v. Eggert, supra, 54 N. Y. 18, the reference to "intermediate" creditors was to creditors at large, not creditors with judgment and execution returned unsatisfied, and the case so states. The court also expressly states:

"A creditor, who acquires a specific right to or lien on the thing pledged, may prevent the pledgee's interest in an undelivered chattel from attaching. But such is not the condition of the creditor at large."

As the trustee in bankruptcy in the instant case has the same rights as against the Fidelity & Deposit Company of Maryland, and consequently as against the city of Syracuse or the commission, that a judgment creditor with execution issued and returned unsatisfied would have, his right is superior to that of both the city or commission and the surety company, and in effect Parshall v. Eggert so declares. Again, section 67a, quoted above, says the claim of the surety company and of the city and commission shall not be a lien against the estate or this property, not for want of record, treating it as an agreement to give a lien, but "for other reasons," viz.—the property to be pledged had not been delivered to the pledgee. As against execution creditors, and hence as against the trustee, the claim under the agreement could not become a lien on the property, as it had not been delivered at the time of the filing of the petition.

In Titusville Iron Co. v. City of New York, supra, 207 N. Y. 203, at page 210, 100 N. E. 806, Chief Justice Cullen, in giving the opinion of the court, expressly quotes section 67a of the Bankruptcy Act, and

states its effect as to liens not perfected at the time of bankruptcy. This is the law of the state of New York, as declared by its highest court, and is controlling in the instant case. The federal courts, as to the extent and validity of a pledge of personal property, are not only controlled, but bound, by the decisions of the state court. Hiscock v. Varick Bank of N. Y., 206 U. S. 28, 37, 38, 27 Sup. Ct. 681, 684 (51 L. Ed. 945). Said the court in that case:

> "The contracts of pledge were made, executed, and to be performed in the state of New York, and the rights of the parties were governed by the law of that state. * * * The questions of the extent and validity of the pledge were local questions, and the decisions of the courts of New York are to be followed by this court."

As to the property actually taken and put in storage by the receiver there can be no question whatever. While not after-acquired property, if we consider the contract or agreement between the surety company and the P. J. Sullivan Company, Incorporated, as a chattel mortgage, which in fact it is, it was not recorded or filed, and no possession was given or taken under it by either the mortgagor or the mortgagee or the city or the commission at any time. If we consider it as an agreement to pledge the property, the pledge was not perfected by any delivery to or possession in the pledgee, unless the placing thereof on the school grounds by the contracting company, to be used by it as its instrumentalities in doing the work contracted to be done, transferred possession and dominion. The decision of the Court of Appeals in the Titusville Case, supra, indicates clearly that such a placing of property on the grounds of the owner for such a purpose does not constitute possession. It was, of course, the understanding of the parties that the P. J. Sullivan Company, Incorporated, the contractor, should possess and exercise dominion over these tools, implements, and materials, as such possession and dominion were absolutely essential to it in performing the contract. On the agreed facts the finding must be that possession was not delivered to or taken by either the surety company, the city, or the commission, prior to the filing of the petition and adjudication in bankruptcy. Security Warehousing Co. v. Hand, 206 U. S. 415, 426, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Marquam v. Sengfelder, 24 Or. 2, 32 Pac. 676; Williams v. Gillespie, 30 W. Va. 586, 5 S. E. 210.

As already stated, neither the surety company, the city, nor the commission took or gained anything as against the receiver or trustee in bankruptcy by taking and using the materials and incorporating them into the building after the filing of the petition in bankruptcy and adjudication. Even if this taking and using would have perfected a pledge, had the taking been done before the petition was filed, such agreement of pledge could not be given life or effect as against the trustee in bankruptcy by taking or obtaining possession of the property thereafter. Fairbanks Shovel Co. v. Wills, 240 U. S. 642, 649, 36 Sup. Ct. 466, 60 L. Ed. 841. In that case (240 U. S. page 649, 36 Sup. Ct. 466, 60 L. Ed. 841), the court holds:

> "Appellant's title was not perfected, as against the trustee in bankruptcy, by taking possession of the dredge under the mortgage after the filing of the petition in bankruptcy and before the adjudication. Since the amendment of

section 47a2 of the Bankruptcy Act by Act June 25, 1910, c. 412, § 8, 36 Stat. 838, 840, trustees have the rights and remedies of a lien creditor or a judgment creditor as against an unrecorded transfer. The estate was in custodia legis from the filing of the petition, and the title of the trustee related back to that date. Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 307 [32 Sup. Ct. 96, 56 L. Ed. 208]; Everett v. Judson, 228 U. S. 474, 478 [33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154]."

In that case the chattel mortgage was valid as between the parties, the mortgagor (bankrupt), and mortgagee, and there was, of course, an equitable lien; but, not having been recorded in the proper county, the mortgage was held invalid as to the trustee in bankruptcy, although the mortgagee took actual possession of the mortgaged property, but only after the filing of the petition and before the adjudication and the appointment of the trustee. As we have seen, since the amendment of June 25, 1910 (Act June 25, 1910, c. 412, 36 Stat. 838), the trustee in bankruptcy has all the rights and remedies of lien creditors as the Supreme Court expressly decides. It can make no difference whether the property in question here was subject to the equitable rights of a mortgagee, whose lien had not been perfected by filing or recording, or to those of a pledgee, whose lien had not been perfected by the delivery of possession of the property to the pledgee. As we have seen, the rights of a creditor with judgment and execution returned unsatisfied (which are the rights a trustee in bankruptcy now has) are superior to those of a person holding an agreement for a pledge unaccompanied by delivery of the property. Parshall v. Eggert, supra, 54 N. Y. 18.

It follows that the petitioners are entitled to the property in actual storage and to the agreed value of that taken and used.

So ordered.

NOTE. In the case filed the same day as the above case (January 4, 1918), wherein the Massachusetts Bonding & Insurance Company was surety for the contractor, there was a clause that all property taken on the grounds by the contractor was to be held by the city as security for the performance of the contract. There was a like clause in the contract between the surety company and the P. J. Sullivan Company, Incorporated, by which it was to have the property as security for the performance of the contract. The city, however, never took possession of the property taken on the school grounds known as the Delaware school until after default by the contractor and the filing of the petition in bankruptcy and the appointment of a receiver. The agreements referred to were not filed or recorded pursuant to the laws of the state of New York in any place as a chattel mortgage.