THE TITUSVILLE IRON COMPANY, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

New York (city of) — board of education a distinct corporation and not an agent of the city — when agreement to give a lien will not be enforced as to after acquired property — when notice must be given to contractor in order to declare contract forfeited — Bankruptcy Act — powers of receiver of contractor under such act.

1. The board of education is a corporation separate and distinct from the city of New York. (L. 1901, ch. 466, § 1062.) No relation of principal and agent exists between the two and the city is not liable for the torts of the board.

2. Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. But it is settled law in this state that they will not be enforced as against creditors.

3. Transfer of possession to the pledgee is necessary to create a valid pledge and the possession must be actual, not merely constructive, unless from the nature of the case the property is not susceptible of manual delivery and possession.

4. A contractor agreed that in case of failure on his part to perform certain work as therein provided, the other party to the contract might give him notice to discontinue the work, and should then have power to complete it and " to use such materials as he may find upon the line of the work" for that purpose. The party entitled to give such notice took possession of property which was not installed in the work nor delivered to or accepted by it, and which was not paid for by the contractor. The party making the sale to the contractor also obtained title to the property from the receiver in bankruptcy of the contractor. *Held*, that the contractor could create no lien thereon cognizable at law either by way of mortgage, pledge or otherwise, and that the title of the creditor is paramount to that of the party in possession.

5. Where written notice is required to be given to a contractor of the election to discontinue the work, such notice is a condition precedent to the right to forfeit the contract.

6. The provisions of the Bankruptcy Act of 1867 and effect of the present act as to the power of the receiver in bankruptcy to

assert the right of creditors of the bankrupt considered and decisions under former act distinguished..

*Titusville Iron Co.* v. *City of New York,* 144 App. Div. 893, modified.

(Argued December 2, 1912; decided December 31, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 8, 1911, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Alger* and *Glenn Ford McKinney* for appellant. Section "Q" of the contract with Hillman does not justify the appropriation of the plaintiff's property for public use, either by the municipality or by ·Olvany, its contractor, without payment therefor. (*McNulty* v. *City of New York,* 168 N. Y. 117; *Milbank* v. *Jones,* 127 N. Y. 370; *Hunt* v. *City of New York,* 47 App. Div. 295; *McKyring* v. *Bull,* 16 N. Y. 297; *Griffey* v. *C. Ins. Co.,* 100 N. Y. 417; *Matter of N. Y.* [*Westchester Townsite*], 143 App. Div. 623; *Clark* v. *Hart,* 6 H. L. Cas. 633; *Morris* v. *Metalline Land Co.,* 164 Penn. St. 326.) There is no merit in the defense that the city of New York and board of education cannot be held liable for conversion, and such defense is in no aspect a defense to the defendant Olvany. (*Lee* v. *Vil. of Sandy Hill,* 40 N. Y. 442; *Stoddard* v. *Vil. of Saratoga Springs,* 127 N. Y. 261; *B. & H. Turnpike Co.* v. *City of Buffalo,* 58 N. Y. 639; Dillon on Mun. Corp. [5th ed.] § 1651; *Gunnison* v. *Bd. of Education,* 176 N. Y. 11; *Jones* v. *City of New York,* 60 App. Div. 161.)

*Archibald R. Watson, Corporation Counsel* (*Terence Farley* of counsel), for city of New York et al., respondents. So far as the defendant the city of New York is

concerned, no cause of action was either pleaded or proven against it. It' is in nowise responsible for the alleged torts of the board of education, its agents or servants. (*Gunnison* v. *Bd. of Education*, 176 N. Y. 11; *Smyth* v. *City of New York*, 203 N. Y. 106; *Brown* v. *City of New York*, 32 Misc. Rep. 571; *Lane* v. *Woodbury*, 58 Iowa, 462; *Ernst* v. *City of West Covington*, 116 Ky. 850; *Clark* v. *City of Nicholasville*, 27 Ky. L. R. 974; *Hill* v. *Boston*, 122 Mass. 344; *Sullivan* v. *Boston*, 126 Mass. 542; *Howard* v. *Worcester*, 153 Mass. 426; *Whitehead* v. *Bd. of Education*, 11 Detroit Leg. N. 923; *Wixon* v. *Newport*, 13 R. I. 454; *Ford* v. *Kendall School Dist.*, 121 Penn. St. 543.) The board of education is not liable in tort for the wrongful acts of its agents or servants in converting the property of another. (*McClure Bros.* v. *School Dist.*, 79 Mo. App. 80.)

*George W. Olvany* and *John Ingle, Jr.*, for William J. Olvany, respondent. The plaintiff's title was not superior to that of the contractor Hillman. The burden of proof was, therefore, on the plaintiff to prove Hillman's right to the chattels in question. (*Jones* v. *City of New York*, 60 App. Div. 151; 171 N. Y. 517.) The contract with Hillman having been declared forfeited by the defendant the board of education, the chattels upon the line of work became, under section Q of the contract, subject to appropriation by the board. (*Matter of Titusville Iron Works*, N. Y. L. J., Dec. 7, 1906.)

CULLEN, Ch. J. On January 27th, 1906, one Hillman entered into a contract with the defendant board of education to furnish and install a heating and ventilating apparatus in a public school. Subsequently the plaintiff sold and delivered to Hillman certain boilers, castings and other parts of a heating apparatus which Hillman intended to use in the performance of his contract, but, so far as appears in the evidence, were not installed in the

building, nor delivered to or accepted by the board of education. The plaintiff was never paid by Hillman for the property. In June following proceedings in involuntary bankruptcy were commenced against Hillman, and on the 18th of that month a receiver of his estate was appointed by the United States District Court. On July 9th Hillman was adjudicated a bankrupt. Meanwhile, on the 27th of June, the board of education declared Hillman's contract forfeited under the following provision contained therein:

"If the work to be done under this contract shall be abandoned by the contractor, or if this contract shall be assigned, or the work sublet by him, otherwise than is herein specified, or if the contractor shall at any time refuse or neglect to supply a sufficiency of workmen and materials of the proper skill and quality, or shall fail in any respect to prosecute the work required by this contract with promptness and diligence, or shall omit to fulfill any provision herein contained, or if at any time the superintendent of school buildings shall be of the opinion and shall so certify in writing to the committee on buildings, that the performance of the contract is unnecessarily or unreasonably delayed, or that the contractor is wilfully violating any of the conditions or covenants of this contract or specifications, or is executing the same in bad faith, or not in accordance with the terms thereof, or if the work be not fully completed within the time named in the contract for its completion, the committee on buildings shall notify the contractor to discontinue all work, or any part thereof, under this contract, by written notice, signed on behalf of said committee by its chairman or acting chairman, to be served upon the contractor either personally or by leaving said notice at his place of residence or business, or with his agent in charge of the work, or with an employe found on the work, and thereupon the contractor shall discontinue the work or such part thereof, and the Board of Education shall thereupon

have the power to contract for the completion of the contract in the manner prescribed by law, or to place such and so many persons as it may deem advisable, by contract or otherwise, to work at and complete the work herein described, or such part thereof, and to use such materials as he may find upon the line of the work and to procure the material for the completion, so as to fully execute the same in every respect, and the cost and expense thereof at the reasonable market rates shall be a charge against the contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the contractor shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to him and shall forfeit all claim to any moneys retained; and no molds, models, centres, scaffolding, planks, horses, derricks, tackle, implements, power plants, or building material of any kind belonging to or used by the contractor shall be removed so long as the same may be wanted for the work."

It also directed the superintendent to proceed with the completion of the work in accordance with the original plans and specifications, and advertised for proposals therefor. On August 11th the receiver of the bankrupt notified the board of education that he claimed the boilers and property heretofore mentioned, and on September 6th, in pursuance of an order made by the United States District Court, the receiver sold all his right and title to the plaintiff. On August 20th the board of education entered into a contract with the defendant Olvany for the performance of the Hillman contract, and in such performance that defendant, with the consent and at the instigation of the board of education, appropriated the boilers and other property of Hillman and installed them in the school building. For this conversion the plaintiff has sued the defendants.

. In no aspect of the case did the plaintiff prove any lia-

bility on the part of the city of New York. It took no part in the transactions of which the plaintiff complains. The board of education is a corporation separate and distinct from the city of New York. (Charter, sec. 1062; *Gunnison* v. *Bd. of Education of N. Y.*, 176 N. Y. 11.) No relation of principal and agent exists between the two and the city was not liable for the torts of the board. (*Ham* v. *Mayor, etc., of N. Y.*, 70 N. Y. 459.) The judgment in favor of the city must, therefore, be affirmed, with costs.

It is urged that the board of education is not liable for the torts of its subordinates. It is unnecessary to consider that question. The evidence shows that the board of education, as such, participated in the appropriation of the property claimed by the plaintiff and for such act, if wrongful, the board was subject to suit. (*Wahrman* v. *Bd. of Education of N. Y.*, 187 N. Y. 331.)

This brings us to the consideration of the respective claims of title to the property. The plaintiff had no lien on the property for the unpaid purchase money, but at the time of the appointment of the receiver title to the property was in Hillman. It then became vested in the receiver of the bankrupt and through the sale by the receiver passed to the plaintiff unless, under the provisions of the contract with Hillman, already quoted, the board of education had the right to appropriate the property. For one reason at least the judgment below cannot be sustained. Referring to the contract, it is to be observed that where a contractor makes default it is provided that " the Committee of Buildings shall notify the contractor to discontinue all work, or any part thereof, * * * by a written notice, signed on behalf of said committee by its Chairman," to be served on the contractor in the manner specified, and "*thereupon*" the board of education shall have power to contract for the completion of the contract, " and to use such materials as they may find on the line of the work." The service of the

notice on the contractor is made, by the contract, a condition precedent to the right to forfeit the contract and appropriate the materials of the contractor. The complaint was dismissed at the close of the plaintiff's case. There was no evidence that such a notice was ever served. We are unwilling, however, to dispose of the case on this narrow ground, as on the record before us, even had the notice been served, still the act of the board would have been wrongful.

At the time of the execution of the contract Hillman had no title to the property, the subject of this suit, nor does it appear even that the property was then in existence. Therefore, he could create no lien thereon cognizable at law, whether by way of mortgage, pledge or otherwise. "It is common learning in the law that a man cannot grant or charge that which he hath not." (See Thomas on Chattel Mortgages, sec. 157; Jones on Chattel Mortgages, sec. 138.) Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. (*McCaffrey* v. *Woodin*, 65 N. Y. 459; *Kribbs* v. *Alford*, 120 id. 519.) But it seems settled law, at least in this state, that they will not be enforced as against creditors. (*Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570; *Zartman* v. *First Nat. Bank of Waterloo* 189 id. 267.) In the first case Judge GRAY said: "The proposition that a mortgage upon chattels having no actual, nor potential, existence, can operate to charge them with a lien, when they come into existence, as against an attaching, or an execution creditor, has frequently been discountenanced and repudiated." (p. 575.) In the second, Judge VANN said: "In other words, the agreement and intention of the parties to a mortgage upon property not yet in existence will be given effect by a court of equity so far as practicable, provided no interest is affected except that

14

of the mortgagor and mortgagee, who entered into the stipulation, but equity closes its doors and refuses relief if the interests of creditors are involved. The result thus announced is founded on principle and sanctioned by authority." (p. 272.) In the opinions in these two cases the authorities are so fully examined and discussed as to make further review unnecessary.

The title of the contractor passed to the receiver in bankruptcy before the forfeiture authorized by the contract had accrued or the defendant taken possession, and the decision in *Skilton* v. *Codington* (185 N. Y. 80) as well as that in the *Zartman Case* (*supra*) are authorities to the effect that the trustee can assert the rights of creditors. We must not be misled by some of the early decisions of the Supreme Court of the United States which were made in cases arising under the Bankruptcy Act of 1867. Under that act the assignee succeeded only to the title of the bankrupt except in cases where, by the express terms of the statute, certain transactions were made fraudulent and void as against the act. So it was held in *Stewart* v. *Platt* (101 U. S. 731) that the assignee could not attack chattel mortgages void against creditors by reason of the failure to file them in the proper place. In *Hauselt* v. *Harrison* (105 U. S. 401) an agreement somewhat similar in effect to that before us was held to create a lien good between the parties, even though void as against subsequent purchasers without notice and creditors levying executions and attachments, and, therefore, immune from attack by the assignee in bankruptcy. This rule, however, has been changed by the present statute, which enacts that " Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." Therefore, the title of the plaintiff was superior to any lien of the defendants.

Nor can the right of the defendant to appropriate the property as a pledge be sustained under the law of this

state.    Transfer of possession to the pledgee is necessary
to create a valid pledge and the possession must be
actual, not merely constructive, unless from the nature
of the case the property is not susceptible of manual
delivery and possession.    (*Wilson* v. *Little*, 2 N. Y. 443;
*Black* v. *Bogert*, 65 id. 601; *McFarland* v. *Wheeler*, 26
Wend. 467.)    There is no evidence in the case that the
board of education ever had any control or possession of
the property prior to the bankruptcy.    Agreement between
the parties could not make that possession which was not
in fact such.    (*McFarland* v. *Wheeler, supra.*)    At most,
delivery of possession was a question of fact for the jury.
(*Seidenbach* v. *Riley*, 111 N. Y. 560.)

There is a vital distinction between the contract in the
case of *Duplan Silk Co.* v. *Spencer* (115 Fed. Rep. 689),
and the one in the case at bar.    There, as pointed out in
the opinion, there was no forfeiture of unused materials,
but they were applied to the completion of the contract,
and if the contract was completed at a cost less than that
which would be due the contractor, had he finished the
contract, he was entitled to the surplus.    In the present
case it is expressly provided that the contractor shall have
no claim for any unpaid balance and shall forfeit all
claims to any moneys retained.    Therefore, if on the
other questions the case cited were an authority in this
state, the distinction pointed out would make the decision
there rendered inapplicable to the present case.    It is to
be also noted that in the *Duplan Silk Co.* case the opin-
ion cites the old cases of *Hauselt* v. *Harrison* and *Stew-
art* v. *Platt*, to which I have already referred and which
are not authorities under the present Bankruptcy Act.

The judgment appealed from so far as relates to the
defendants board of education and Olvany should be
reversed and a new trial granted, with costs to abide the
event.

CHASE, J.    I concur in the result on the ground first
stated.    I do not concur on the ground last stated.    By

the contract with Hillman he agreed "to furnish and provide all the work and materials necessary and proper in, toward or about the said contract according to the several plans and drawings prepared therefor and the specifications."

The "heating and power boilers, castings and appurtenances" described in the complaint were delivered "upon the line of the work" for use in the public school building as provided by the contract, and to that extent the contract was performed.

Paragraph "Q" of the agreement expressly provides that in case the contract is abandoned by the contractor the board of education shall have the power to contract for the completion of the contract and "to use such materials as he may find upon the line of the work and to procure other materials for the completion so as to fully execute the same in every respect."

It is conceded that the materials described in the complaint were delivered at the school building early in June, 1906, and that as between the plaintiff and Hillman became the property of Hillman, the contractor, and they were subsequently and after the abandonment of the contract by Hillman and his bankruptcy used in the completion of the building.

The claim of the Titusville Iron Company in this action is not based upon the fact that it was a sub-contractor under Hillman, the contractor. It rests wholly upon its purchase of the "heating and power boilers, castings and appurtenances" from the assignee in bankruptcy and is the same as that of any stranger who might have become such purchaser.

Under the contract and the facts shown by the record the personal property so delivered upon the line of the work became, as between the contractor and the owner, subject to the qualified property of the owner therein.

It also became on delivery sufficiently in the possession of the owner to protect its qualified property therein by

virtue of the contract even as against the creditors of the contractor, and the contract was not in fraud of the Bankruptcy Act. (*Duplan Silk Co.* v. *Spencer*, 115 Fed. Rep. 689, 695.)

As soon as the materials, necessary and proper to carry out the contract by Hillman, were delivered by him upon the line of the work, the contract became an executed one as to such materials, at least for the purpose of giving the owner a qualified title to the same, the only qualification in the title being that such materials could be used by the contractor in completing the contract and could be retaken by him or his assignee in case the contract was completed without the same being so used.

HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J., and HISCOCK, J., concurs in result; COLLIN, J., absent.

Judgment accordingly.