Percival Wilds, as Trustee in Bankruptcy of Midtown Contracting Company, Appellant, *v.* The Board of Education of the City of New York, Respondent.

First Department, February 7, 1919.

**Contract — provision that owner on default of contractor may use materials to complete building — bankruptcy of contractor — title of owner superior to that of trustee.**

Where a contract to construct a municipal high school entitled the board of education to take possession of building materials upon a breach by the contractor and to use the materials for the completion of the work, the board of education, having appropriated such material on the contractor's default, obtained a vested right therein and a trustee subsequently appointed on the bankruptcy of the contractor cannot maintain an action in replevin or for the conversion of the material while such possession continued pursuant to the building contract.

The trustee is only entitled to the possession of the material which may remain unused by the board of education.

Shearn and Page, JJ., dissented, with opinion.

Appeal by the plaintiff, Percival Wilds, as trustee, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 9th day of May, 1918, upon the verdict of a jury rendered by direction of the court, and also an appeal is taken from the order directing the verdict which was entered in said clerk's office on the 6th day of May, 1918.

*Irving L. Ernst* of counsel [*Olcott, Bonynge, McManus & Ernst,* attorneys], for the appellant.

*Terence Farley* of counsel [*Joseph L. Pascal* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

Laughlin, J.:

The material facts are sufficiently stated by Mr. Justice Shearn, but I am of the opinion that the law applicable thereto requires an affirmance of the judgment.

The contract, in so far as it authorized the defendant to take possession of the building material, upon a breach thereof by the contractor and action to be taken by the defendant thereunder, was wholly executed prior to the institution of

the bankruptcy proceeding in which the plaintiff was appointed trustee. The provisions of the contract thus authorizing the defendant to take possession of and use the building material in the construction of the building were manifestly inserted as security or as additional security to the defendant with respect to the performance of the contract which it entered into with the bankrupt. That contravened no statute or public policy of this State. It was neither alleged nor shown that those provisions were inserted for the purpose of defrauding the creditors of the contractor, and there is no ground for holding that they are constructively fraudulent as against such creditors. Such provisions have customarily been inserted in municipal contracts from time immemorial, and so far as I recall or have been able to find, no court heretofore has held that the *possession* of the building material acquired by a municipality or a branch of the municipal or State government under such provisions is unlawful as against the general creditors of the contractor or that an action in replevin, or for the conversion of such building material will lie while such possession is continued pursuant to the contract.

We are not now concerned with any question relating to the rights of the defendant with respect to this material *prior* to the time it became entitled to take possession thereof, and did take such possession. Those are questions which were discussed in the majority opinion in *Titusville Iron Co.* v. *City of New York* (207 N. Y. 203), after, however, the court had therein decided that the board of education had not complied with the conditions precedent to its right to take possession of the building material, upon which point it was recognized in the majority opinion that the case might have been decided adversely to the claim of the board of education in that case. It being uncontroverted in that case that the board of education, upon no view of the evidence, had taken any step to acquire the right to the possession of the building material or took possession thereof until after the institution of the bankruptcy proceeding and the appointment of the receiver therein, the majority of the court were of the opinion that title to the material passed to the trustee in bankruptcy, and that his title could not be impaired by any subsequent action by the board of education under the contract. But

even in this view two of the judges did not concur, and one dissented therefrom in an opinion. As I read the majority opinion in that case, it clearly recognizes that if the board of education had acquired the right to take possession of and use the building material before the trustee in bankruptcy was appointed and had taken possession thereof, those facts might have required a different decision. It appears to be conceded that the board of education had a right to retain possession of the contractor's plant under the contract and to use the same in the erection of the building. The principle applicable to the material is, I think, precisely the same. Upon the contractor's default and the due termination of his contract by the board of education as therein provided, the board of education became the lawful bailee of the plant and of the building material, with the right to use the one for the reasonable time required in completing the contract, and with the right to use the other *in* the erection of the building as it is doing. As the board of education used the building material in the erection of the building, its right, which down to that time was merely to the possession, ripened into title, and if on the completion of the building any of the building material delivered on the site by the contractor which the board of education thus took possession of, remains unused, then the right to possession thereof by the board of education will terminate, and it will be obligated to deliver the same to the plaintiff.

It appears to me, therefore, quite clear that the board of education acquired a vested right to the possession of the building material before the plaintiff was appointed trustee, and that the plaintiff has utterly failed to show that its lawful right to possession has in any manner terminated.

The judgment should, therefore, be affirmed, with costs.

CLARKE, P. J., and MERRELL, J., concurred; PAGE and SHEARN, JJ., dissented.

SHEARN, J. (dissenting):

The controversy arises out of the bankruptcy of the Midtown Contracting Company, of which the plaintiff is the trustee in bankruptcy. The petition was filed on August 15, 1916.

On October 13, 1914, the bankrupt made a contract with

the defendant to construct a high school. In July, 1916, the bankrupt abandoned the work and the defendant duly notified the bankrupt pursuant to its contract to discontinue further work. On August 11, 1916, the defendant took possession of such building materials, plant and equipment belonging to the bankrupt as it found on the line of the work, pursuant to clause Q of its contract, the material part of which provides that the defendant may use such materials as it may find on the line of work in case of a default on the part of the contractor. Four days after the defendant took possession a petition in bankruptcy was filed against the bankrupt as hereinbefore stated. By stipulation the plaintiff is entitled to recover, if at all, a judgment of $7,000, representing the value of the building materials, it having been agreed that the plant and equipment are to be returned to the plaintiff. It is conceded that the building material which the defendant took possession of belonged to the bankrupt, and that at the time of the execution of the contract between the defendant and the bankrupt, the bankrupt had no title to the building materials. The question is whether the defendant has a title to or lien on the building materials taken by it that is superior to that of the plaintiff.

In 1910 the Bankruptcy Act was amended at section 47 thereof so that the trustee, " as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." (30 U. S. Stat. at Large, 557, § 47, subd. a, cl. 2, as amd. by 36 id. 840, § 8.) Accordingly, the questions are to be considered with the understanding that the trustee is in the position of a judgment creditor holding an execution duly returned unsatisfied. Clause Q of the contract with which we are concerned provides that if the work to be done under the contract shall be abandoned by the contractor, " The Board of Education shall thereupon have the power to contract for the completion of the contract in the manner pre-

First Department, February, 1919.          [Vol. 186.

scribed by law, or to place such and so many persons as it may deem advisable by contract, or otherwise to work at and complete the work herein described, or such part thereof, and to use such materials as he may find upon the line of the work and to procure other material for the completion, so as to fully execute the same in every respect, and the cost and expense thereof at the reasonable market rates shall be a charge against the Contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract.''

One purpose of this provision clearly is to minimize loss to the owner consequent upon the contractor's abandonment of the work and to secure, as far as possible, payment by the contractor to the owner of the excess cost of completion. This purpose is sought to be achieved by contracting to give the owner a lien upon materials found upon the line of the work, which lien shall become effective, as between the contractor and the owner, by the owner taking the materials into possession. This provision is, therefore, properly to be construed as a contract to give a lien in the future and upon the happening of specified contingencies.

This very controversy was brought into the United States District Court for the Southern District of New York on the review of an order of a referee denying the petition of the trustee to require the board of education to turn over to him these building materials, and Judge MAYER reversed the order and sustained the rights of the trustee. (*Matter of Midtown Contracting Co.*, 238 Fed. Rep. 871.) Judge MAYER based his decision upon the case of *Titusville Iron Co.* v. *City of New York* (207 N. Y. 203) which, in turn, was based upon *Zartman* v. *First National Bank* (189 id. 267). (See, also, the thorough discussion of the general subject by Judge RAY in the more recent case *Matter of P. J. Sullivan Co., Inc.*, 247 Fed. Rep. 139.)

The learned justice at Trial Term (103 Misc. Rep. 318) has sought to distinguish the facts in this case from the *Titusville* case, but I agree with Judge MAYER that the differing facts do not affect the principle involved and that the *Titusville Iron Co.* case is controlling. The principle underlying these cases,

and controlling in the case at bar, is that a lien cannot be created upon property not in existence, and the mere taking of property into possession, once it has come into existence, though such possession be pursuant to contract, does not create a lien as against general creditors. In other words, a mortgagee cannot add to his title by his own act.

The *Titusville Iron Co.* case was exactly the same as this one and involved the same form of agreement, the only point of difference being that the taking of the property in the former case by the department of education was subsequent to the bankruptcy. In reversing the judgment dismissing the complaint in the *Titusville Iron Co.* case, Chief Judge CULLEN said: " At the time of the execution of the contract Hillman had no title to the property, the subject of this suit, nor does it appear even that the property was then in existence. Therefore, he could create no lien thereon cognizable at law, whether by way of mortgage, pledge or otherwise. * * * Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. (*McCaffrey* v. *Woodin*, 65 N. Y. 459; *Kribbs* v. *Alford*, 120 id. 519.) But it seems settled law, at least in this State, that they will not be enforced as against creditors. (*Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570; *Zartman* v. *First Nat. Bank of Waterloo*, 189 id. 267.) "

The learned justice at Trial Term concedes that the facts in the *Titusville Iron Co.* case are in many respects identical with those in this case, but finds, as a fundamental difference, that the taking in the *Titusville* case was after the bankruptcy, whereas in this case it was a few days before. It seems clear to me, however, upon reading the *Zartman* case, upon which the *Titusville* case was based, that the fundamental proposition, and the basis of the *Titusville Iron Co.* decision, was that a man cannot grant what he does not own actually or potentially. It is conceded that an attempt to create a lien upon after-acquired property is void as to creditors. Yet it is assumed that somehow, and in some unexplained fashion, the party in whose favor the void lien was attempted to be created can render a void lien valid and enforcible

simply by taking possession of the property. *Stephens* v. *Perrine* (143 N. Y. 476) effectually answers any claim that mere vigilance or celerity of action made any difference. In that case a receiver in supplementary proceedings brought an action to set aside a mortgage given by Aldrich & Company to Mary J. Perrine in February, 1892, which was not filed until March 30, 1892. The mortgaged property remained in the possession of the mortgagors until the date of filing when the mortgagee took possession of it under her mortgage, and after advertisement the property was sold and the mortgagee became the purchaser. At the trial court the plaintiff had judgment, which was reversed in the General Term (69 Hun, 578) upon the ground that even though the mortgage was void as to existing creditors, inasmuch as the mortgagee had filed her mortgage and taken possession of the property before the creditors represented by the plaintiff had obtained any lien on the property by judgment and execution or by some other legal process, the mortgagee had the right to hold such property or proceeds against the creditors. The Court of Appeals held that the General Term erred, the point discussed being the effect, if any, of the defendant taking possession of the mortgaged property prior to the time that any creditor had obtained a lien by judgment and execution. PECKHAM, J., said: " * * * I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it and which assert the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which rest upon the invalidity of the mortgage. If void, what right has the mortgagee, as against creditors, to take possession in her character of mortgagee and to sell or dispose of property described in it? Clearly, she has none, and she does not acquire any by the celerity of her movements in seizing and selling property under it."

Stress is laid upon the fact that Chief Judge CULLEN said in the *Titusville Iron Co.* case: " There is no evidence in the case that the board of education ever had any control or possession of the property prior to the bankruptcy." This is seized upon as an intimation that if the board of education had taken possession,

prior to the bankruptcy the case would have been differently decided. But in making this remark, Chief Judge CULLEN was dealing with a second argument made in that case, namely, as to the right of the defendant to appropriate the property *as a pledge,* and, after pointing out that transfer of possession to the pledgee is necessary to create a valid pledge, he made the remark above quoted. He had already disposed of the other branch of the case upon the principle that a lien could not be created on property not then in existence. I do not understand that there is any contention in this case that the property was pledged.

Finally it is argued that in the *Zartman Case (supra)* the chattel mortgage was held to be void because it was on a shifting stock of goods and the mortgagor reserved the right to sell such stock and use the proceeds for his own benefit. Careful reading of the opinion convinces me that the decision in the *Zartman* case was not based solely on that ground. If it had been, much of the able opinion would have been wholly unnecessary. Two grounds were assigned why the alleged lien was not good at law, one being " because a man cannot grant what he does not own, actually or potentially."

Possession was taken in the *Zartman* case by the mortgagee three days *before* the bankruptcy. It was not only held that such possession did not " ripen the lien," but it was clearly shown that, as against creditors, possession is of no importance, Judge VANN saying: " If a lien was created by the mortgage upon property not in existence at its date, possession after it came into existence was of no importance. If no lien was created by the mortgage upon such property, the taking of possession pursuant to its terms did not create one as against general creditors, who are presumed to have dealt with the mortgagor in reliance upon its absolute ownership of the stock on hand."

Reliance is had upon the decisions *Matter of Shelly* (235 Fed. Rep. 311; affd., 242 id. 251) and *Duplan Silk Co.* v. *Spencer* (115 id. 689). The latter case was distinguished by Chief Judge CULLEN in the *Titusville* case, and in the former the learned district judge referred to the *Titusville* case and said that the contract that he had under consideration was " radically different in respect to the rights of the contractor."

First Department, February, 1919.        [Vol. 186.

One further contention of the respondent deserves consideration. It is contended that if a person agrees, by contract, to transfer property which he does not then own, and that property subsequently comes into his possession, and he delivers it to the person with whom he has made the contract, the transfer immediately becomes effective. But that is not this case. Concededly the contract contains no such provision in terms. If any such agreement is to be inferred from the terms employed, it would naturally follow that the owner was at liberty, if it saw fit, to refrain from using the materials to finish the building and to make any other use of the materials that it saw fit, or even to sell the unused materials for such price as it could obtain. Any such construction, however, would run directly counter to the provision in the contract which specifies the right of the owner to be " to use such materials as he may find upon the line of the work and to procure other material for the completion, so as to fully execute the same in every respect." Thus the contract shows on its face that we are not dealing with any such contract as assumed by respondent's counsel by way of argument. Neither did the contractor ever make delivery to the defendant, as assumed in the illustration. It merely abandoned the work and the defendant *took* possession. I do not see that it advances the discussion to speak of the defendant as having a " qualified ownership " in the property, for short of actual ownership, which was not provided for by the contract, the only rights of the defendant were contract rights, and the correct interpretation of these rights, as it seems to me, is that the contract sought to create a lien upon the materials to become effective in the future and upon the happening of specified contingencies — something that was entirely enforcible as between the contract and the owner but, as held in the *Titusville* case, void as against judgment creditors.

The judgment should be reversed, with costs, and judgment directed in favor of the plaintiff, pursuant to the stipulation, for $7,000 and costs.

PAGE, J., concurred.

Judgment affirmed, with costs.