No. 22,470.

THE WINCHESTER PACKING COMPANY, a Partnership Com-
posed of C. S. WINCHESTER and S. A. WINCHESTER, *Ap-
pellees,* v. C. F. MOYER et al. (GEORGE PHILLIPS and THE
CENTRAL STATE BANK, Intervenors, *Appellants*).

SYLLABUS BY THE COURT.

STOCK OF MERCHANDISE—*Sold in Violation of Bulk-Sales Act—Mortgage
Given by Purchaser—Rights of Creditors of Vendor.* A merchant sold
a stock of goods and fixtures when indebted over $4,000, the purchaser
borrowing of a bank $2,000 to use in part payment of the purchase
price, giving a chattel mortgage on the property in question. The
bank recorded its mortgage a few weeks thereafter. A wholesale
house, within two days after the sale, brought suit to reduce its claim
of some $2,000 to judgment, and attached the property, the sale being
restrained until the further order of the court. Some months after-
wards the claim was reduced to judgment and a levy made and the
proceeds of the sale thereunder brought into court. The sale of the
merchandise and fixtures was in utter disregard of the bulk-sales
statute (Gen. Stat. 1915, § 4894). The seller said that he owed no
debts. *Held,* that the creditors of the seller had a right to look to the
property for their debts, the sale being void as to them. *Held,* further,
that the creditor proceeding by attachment and later by execution took
itself out of the class of unsecured creditors. *Held,* further, that the
bank, having taken the chattel mortgage, must yield to the secured
claim of the other party, for the reason that a chattel mortgagor can-
not pass any greater title than he has, and in this case having none at
law could transfer none.

Appeal from Reno district court; FRANK F. PRIGG, judge.
Opinion filed February 7, 1920. Affirmed.

*E. T. Foote,* of Hutchinson, for the appellants.

*F. L. Martin, John M. Martin,* and *Walter F. Jones,* all of
Hutchinson, for the appellees.

The opinion of the court was delivered by

WEST, J.: The defendant, Moyer, sold a stock of goods and
fixtures to G. W. Phillips, no attention being paid to the bulk-
sales act. There were two mortgages on the fixtures in force
when the sale was made, covering a balance due on the pur-
chase price thereof. Moyer owed about $4,500 which was un-

secured. When Phillips made the purchase he executed to the Central State Bank a mortgage on the property for $2,000, which was recorded on August 3, 1917. This was for money borrowed by Phillips to pay Moyer. When the sale was made Moyer told Phillips he owed no outstanding accounts. No one concerned had any intention to defraud, but all ignored the statutory requirements. On November 27, 1917, Moyer was adjudged a bankrupt. Claims amounting to less than $500 have been filed in bankruptcy. On February 6, 1918, the Winchester Packing Company obtained judgment against Moyer for $2,027.23, with interest thereon. An attachment was issued and levied on the fixtures sold by Moyer to Phillips, the sale being restrained until the further order of the court. The sale by Moyer to Phillips included merchandise of the value of $400 which has since been sold by Phillips and the proceeds converted to his own use. The Winchester Packing Company has not filed its claim in the bankruptcy proceedings. When the purchase was made Moyer gave a check to the plaintiff for $317 which remained unpaid at the State Exchange Bank for want of funds and was afterwards paid from money received at the time he sold to Phillips.

The trial court dissolved the attachment, no exception to such order being taken by the plaintiff, and no appeal being taken therefrom by the trustee in bankruptcy, who appeared no further in this matter. The court held that the sale of the goods was in violation of the bulk-sales act, and Phillips was given thirty days in which to answer and set up any reasons he might have why the property he had bought from Moyer should not be subject to sale to satisfy the plaintiff's claim. Phillips, intervenor, prayed that the sheriff be restrained from taking possession and that the property be left in its present condition until the rights of the intervenor could be determined, which latter order was made on February 8, 1918. Afterwards, by agreement, the property was sold, and the proceeds brought into court. The court found that the money received from the sale of the goods and fixtures should be applied first to the payment of the costs of this action, and the remainder to the Winchester Packing Company, from which findings and judgment the Central State Bank and George Phillips appeal, claiming that such judg-

ment is contrary to the evidence and not supported by the facts.

The defendants contend that Moyer's creditors cannot pursue this property because it has been, for the past four months, in the hands of Phillips; that such pursuit could be made only in case of fraud or the making of a fraudulent transfer. It is also suggested that Phillips had bought the property and retained possession four months before the adjudication of bankruptcy.

The plaintiff argues that the sale to Phillips was in violation of the bulk-sales statute, and that, therefore, no title passed as against the plaintiff; that the value of the property at the time of the sale was $2,900, while Moyer's indebtedness consisted of $752 secured claims, and $4,000 unsecured; that the plaintiff secured a lien upon the property, although the attachment was subsequently dissolved, and is entitled to an amount not to exceed the difference between the $2,900, the value of the goods, and $752, secured. It is contended that Phillips is not entitled to be subrogated, as he did not pay the mortgage claims, but merely bought in violation of the bulk-sales act; that while Moyer had a right to prefer his creditors, Phillips could not acquire any rights of subrogation to those preferred by Moyer, and that the claim of the Central State Bank is bad because its president knew when it loaned the money that it was to be used for the purchase of the stock and fixtures sold in violation of the bulk-sales statute, and, therefore, was not a mortgage in good faith. It must be borne in mind that the contest is now between the plaintiff company, on the one hand, and the Central State Bank and Phillips on the other. The plaintiff having proceeded by levy and attachment, although the sale was restrained, finally took judgment and levied execution and thereby took itself out of the category of unsecured creditors.

Of course, Phillips purchased subject to the rights of creditors to appropriate the property for the payment of their debts (*Burnett v. Trimmell,* 103 Kan. 130, 176 Pac. 6), and until satisfaction of the claims of existing creditors he had but small right in the matter, and practically none at all as against them. Other parties to the litigation, including the trustee in bankruptcy, have dropped out. The plaintiff be-

gan suit two days after the sale to Phillips, which was July 26, and the bank's mortgage was not recorded until August 3, following. Phillips sold $400 worth of stock purchased from Moyer and kept the proceeds. It is urged that this should be deducted from what the bank would otherwise receive. On the contrary, it is suggested that its rights were fixed when its mortgage was taken and that any subsequent act of Phillips could not prejudice the rights of the bank or affect its security based upon other property included in the mortgage. But as its title could rise no higher than its source, Phillips, and as Phillips had no right whatever to use the property to secure the bank, so also the bank had no right, as against existing creditors, to look to such property for security. Under the statute (Gen. Stat. 1915, § 4894), the sale was void as to existing creditors, who had the same right to proceed against the property as if it were still held by Moyer. Hence, the source of its title failing, the bank must step aside for the plaintiff, whose claim is substantially larger than the amount realized from the sale under the levy.

"It is obvious that a mortgagor can convey by mortgage only that interest which he possesses." (11 C. J. 428.)

In *Titusville Iron Co. v. City of New York*, 207 N. Y. 203, the court, speaking through Chief Justice Cullen, said:

"At the time of the execution of the contract Hillman had no title to the property, the subject of this suit, nor does it appear even that the property was then in existence. Therefore, he could create no lien thereon cognizable at law, whether by way of mortgage, pledge or otherwise. 'It is common learning in the law that a man cannot grant or charge that which he hath not.'" (p. 209.)

"A mortgage of goods which the mortgagor does not own . . . is void in respect to such goods as against subsequent purchasers or attaching creditors." (Jones on Chattel Mortgages, 5th ed., § 138.)

(See, also, *Brown v. Bolt*, 116 Mich. 52.)

We have disregarded the effect of the bankruptcy proceedings, as they do not seem to increase or impair the rights of the parties to this appeal, if indeed, they could be heard as against one another to invoke the bankruptcy proceedings in view of what has taken place.

Other points covered by the briefs touching the claims of other parties are unnecessary to consider, in view of the foregoing.

The judgment is affirmed.