**Matter of IDEAL MERCANTILE COR-PORATION, Alleged Bankrupt.**

United States District Court
S. D. New York.
July 24, 1956.

Freda Silbowitz, New York City, Michael Berman, New York City, of counsel, for petitioning creditors.

Schwartz, Rudin & Duberstein, Brooklyn, N. Y., Max Schwartz, Brooklyn, N. Y., of counsel, for bankrupt.

WEINFELD, District Judge.

These are cross petitions to review an order of the Referee in Bankruptcy adjudging Ideal Mercantile Corporation a bankrupt. Ideal contends the Referee erred in finding that it had committed an act of bankruptcy by failing to vacate or discharge within thirty days a lien against its property obtained by a judg-

ment creditor.[1] The petitioning creditors by cross petition charge the Referee erred in finding that the alleged bankrupt had not committed other acts of bankruptcy when it assigned, while insolvent, claims against the United States for refund of customs duties.[2]

On November 19, 1954, three creditors of Ideal filed an involuntary petition against it. The petition alleged in general terms the making of fraudulent and preferential transfers, but failed to specify dates, amounts or transferees. Upon Ideal's motion to dismiss the petition for indefiniteness the petitioning creditors cross-moved for, and were granted, leave to serve an amended petition. The amended petition was filed on February 11, 1955, enumerating specific acts of bankruptcy. Ideal served an answer which in general contested the charges. The issues so joined were tried before the Referee whose order is now the subject of the petitions to review.

The issues and the proof before the Referee centered about (1) the assignment of the claims for customs refunds, and (2) the failure to vacate and discharge an alleged lien against Ideal's property. All other claims of preferential payment set forth in the amended petition were withdrawn.

■ A preliminary question is whether the date of filing of the original or the amended petition determines the four months period within which the alleged acts of bankruptcy were committed. The assignment of the customs refund claims was first ascertained by the petitioning creditors during an examination of an officer of Ideal conducted on December 28, 1954, under the original petition. Thus the alleged acts of bankruptcy based upon the assignment of the customs refunds set forth in the amended petition became known to the petitioning creditors only after the filing

of the original petition. Hence there is ample support for the Referee's finding that the petitioning creditors, when they filed the original petition on November 19, 1954, neither knew of nor attempted to plead the assignment. As to the alleged lien, the failure to discharge which within thirty days was also charged as an act of bankruptcy, there was no claim that the lien attached until December 30, 1954, some six weeks after the filing of the original petition. Accordingly, the acts of bankruptcy alleged in the amended petition must be regarded as new acts and may not be related back to the original petition.[3]

We first consider the Referee's disposition of the issues posed by the assignment.

Ideal was admittedly insolvent on and after July 20, 1954 and it ceased to do business in August of that year. On August 2, 1954, it executed and delivered to the firm of Kraditor and Haber, its attorneys and accountants, an assignment of all its claims for refund of customs duties paid under protest to the United States. The claims aggregated $38,447.85 and were assigned in full payment of an antecedent indebtedness of $11,491.09 allegedly due to the assignees from the alleged bankrupt for accounting and legal services and a loan in the approximate sum of $2,500. This assignment is attacked as preferential. If the assignment was perfected on August 2, 1954, when made, it is immaterial whether it was so tainted since, whatever its character, it was made more than four months before the filing of the amended petition and hence could not constitute an act of bankruptcy.

The Referee concluded that the assignment of the customs claims by Ideal was "complete upon delivery" since under New York law there was no requirement that it be filed or recorded.[4]

1. Bankruptcy Act, § 3, sub. a(3), 11 U.S. C.A. § 21, sub. a(3).

2. Bankruptcy Act, § 3, sub. a(2), 11 U.S. C.A. § 21, sub. a(2).

3. Dworsky v. Alanjay Bias Binding Corp., 2 Cir., 182 F.2d 803; Glint Factors, Inc., v. Schnapp, 2 Cir., 126 F.2d 207.

4. Rockmore v. Lehman, 2 Cir., 129 F.2d 892, certiorari denied 317 U.S. 700, 63

Whether or not this conclusion is correct depends upon the nature of the assignment.[5] If it was an assignment of an existing contract under which payments were to become due in the future, then it was a perfected transfer which occurred more than four months before the filing of the amended petition and the Referee's ruling must be upheld.[6] On the other hand, if the assignment created only an unperfected lien then, under Section 60, sub. a(2) of the Bankruptcy Act the assignment must be deemed to have been made immediately before the filing of the amended petition and constituted an act of bankruptcy as a preferential transfer within the four months period.[7]

▮▮ When made the purported assignment was "absolutely null and void" as against the Government since the claims had never been allowed and no warrant had been issued for their payment.[8] However, the bar against assignment of such claims is "for the protection of the Government and not for the regulation of the equities of the claimants as between themselves."[9] Thus the issue to be resolved centers about the assignees' rights as against those of Ideal's creditors.[10]

Section 3 of the Bankruptcy Act provides:

"(a) Acts of bankruptcy by a person shall consist of his having * * * (2) made or suffered a preferential transfer, as defined in subdivision a of Section 60 of this Act * * *.

"(b) A petition may be filed against a person within four months after the commission of an act of bankruptcy. * * * and such time

with respect to the second act of bankruptcy shall not expire until four months after the date when the transfer became perfected as prescribed in subdivision a of section 60 of this Act."

Section 60, sub. a(1) of the Bankruptcy Act, insofar as applicable, provides:

"A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60, sub. a(2) defines perfection of transfer as follows:

"For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * * if any transfer * * * is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition."

S.Ct. 525, 87 L.Ed. 559; New York Personal Property Law, § 41, McK.Consol. Laws, c. 41.

5. See, Seamon v. Federated Films, Inc., City Ct., 142 N.Y.S.2d 324, 329, 331.

6. Rockmore v. Lehman, supra, note (4).

7. See. Bankruptcy Act, § 60, sub. a(6), 11 U.S.C.A. § 96, sub. a(6).

8. 31 U.S.C.A. § 203. See, also John Shil-

lito Co. v. McClung, 6 Cir., 51 F. 868; Wooton v. United States, 86 F.Supp. 143, 114 Ct.Cl. 608, certiorari denied 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333.

9. McKenzie v. Irving Trust Co., 323 U.S. 365, 369, 65 S.Ct. 405, 407, 89 L.Ed. 305; Goodman v. Niblack, 102 U.S. 556, 560, 26 L.Ed. 229.

10. 3 Collier on Bankruptcy ¶60.48.

Under Section 60, sub. a(2) the determination of when a transfer is perfected depends upon state law.[11] Since at the time of delivery of the assignment no fund was in existence it is necessary to inquire just what rights were created by it. Whether or not any fund would ever come into existence was problematical. The Government was under no commitment to allow the claims. Under these circumstances the authorities are in accord that the purported assignment was no more than an executory agreement to transfer the refunds if and when they ever came into existence,[12]—or as some of the cases put it, it created an equitable assignment or an equitable lien in favor of the assignee.[13] But however denominated, it is clear that under New York law should a fund ever come into existence within four months prior to the filing of a petition in bankruptcy, the equitable right of the assignee would be subordinate to the lien of a judgment creditor.[14] Since the assignment did not meet the perfecting test of Section 60, sub. a(2), then under the provisions of that Section it must be deemed to have been made immediately before the filing of the amended petition. Accordingly, the assignment, made when Ideal was admittedly insolvent, was a preferential transfer within the four months period and upon the established facts constituted an act of bankruptcy.

The situation here presented may be analogized to similar problems considered in a number of cases, including the so-called "liquor license cases".

In Re Modell, 2 Cir., 71 F.2d 148, 149, an involuntary petition was filed in June, 1932 and an adjudication was entered. In October, 1930, the bankrupt had assigned to one of his creditors all " 'right, title and interest in * * * any * * * judgment or proceeds thereof' " which the assignor might recover in his then pending suit for malicious prosecution. A judgment was entered in June, 1932, which the bankrupt formally assigned to the same creditor on June 2, 1932. The creditor-assignee, conceding the June, 1932, assignment was a voidable preference, contended that by virtue of the October, 1930, assignment he had acquired a valid equitable lien on the proceeds of the suit. The Second Circuit rejected this argument holding: (1) the October, 1930, assignment was "no more than an executory agreement to transfer [the proceeds] when it shall come into existence"; and (2) the equitable lien did not relate back to the October assignment.[15]

In Re Silver Cup Bar and Grill, Inc., D.C.S.D.N.Y., 50 F.Supp. 528, 529, petitioner in January, 1942, loaned bankrupt a sum of money and as security received an assignment of the refund due upon surrender of the remaining term of a liquor license. A bankruptcy petition was filed against the assignor in August, 1942. Petitioner claimed that he obtained a valid lien on the refund by virtue of the January assignment. The Court held: "What was assigned was the right to a refund of money not then in existence. That fund did not come into existence until the license was surrendered and a receipt issued. * * * As the fund came into existence within four months of the filing of the petition

---

11. In re Morasco, 2 Cir., 233 F.2d 11, 13; 3 Collier on Bankruptcy ¶60.39.

12. See, In re Modell, 2 Cir., 71 F.2d 148; Restatement, Contracts § 154(2).

13. See, e. g., Atlas Advertising Agency, Inc., v. Casa Cubana, Inc., 259 App.Div. 951, 19 N.Y.S.2d 900; Alchar Realty Corp. v. Meredith Restaurant, Inc., 256 App.Div. 853, 8 N.Y.S.2d 733.

14. In re Modell, 2 Cir., 71 F.2d 148; Titusville Iron Co. v. City of New York, 207 N.Y. 203, 100 N.E. 806; Zartman v. First National Bank of Waterloo, 189 N.Y. 267, 82 N.E. 127, 12 L.R.A.,N.S., 1083; Atlas Advertising Agency, Inc., v. Casa Cubana, Inc., 259 App.Div. 951, 19 N.Y.S.2d 900.

15. See discussion of this decision in Okin v. Isaac Goldman Co., 2 Cir., 79 F.2d 317, and in this respect compare 31 U.S. C.A. § 203 with New York Personal Property Law, § 41, Mck.Consol.Laws, c. 41.

For a discussion of the "relation back" doctrine and equitable liens, see 3 Collier on Bankruptcy ¶60.50.

in bankruptcy, the lien of the petitioner is not valid as against a trustee in bankruptcy."[16]

Rockmore v. Lehman, 2 Cir., 129 F.2d 892, certiorari denied 317 U.S. 700, 63 S.Ct. 525, 87 L.Ed. 559, relied upon by Ideal to support the Referee's conclusion, is inapplicable. That case involved an assignment of an *existing contract* under which payments were to become due—a circumstance, as already noted, not present in the instant case.

In sum, the Referee's conclusion that the assignment did not constitute an act of bankruptcy as a preferential transfer by Ideal while insolvent was erroneous and must be reversed.

This conclusion makes it unnecessary to consider the further objections to the assignment urged by the petitioning creditors.

We now pass to a consideration of Ideal's cross attack on the Finding and Conclusion that it had committed an act of bankruptcy by failing to vacate within thirty days a lien which attached to its property and upon which the order of adjudication was entered.

On November 18, 1954, Witkowski New York Agency, Inc., recovered a judgment in the Supreme Court, New York County, against Ideal. Execution was issued upon the judgment to the sheriff on December 30, 1954. At that time Ideal was the owner of two automobiles which then constituted its sole property. The sheriff never made an actual levy upon the cars and returned the execution wholly unsatisfied on March 4, 1955.

On August 27, 1954, Ideal had executed to the Commercial State Bank and Trust Co. of New York a promissory note for $2,200 payable in monthly installments of $100 each, the first of which was payable September 27, 1954. At the time of the issuance of the execution to the sheriff $300 had been paid—so that the note was in default at least to the extent of the installment which fell due on December 27, 1954. As security for the payment of the note Ideal had delivered a chattel mortgage on the two automobiles above mentioned which was duly filed. It provided that if a petition in bankruptcy was filed by or against the mortgagor or in case of default in the performance of any of the terms of the note which it secured, the entire amount then unpaid should become due and the mortgagor authorized the bank to take the chattels covered by the mortgage.

Following the default, on or about December 31, 1954, or a few days thereafter the bank had taken possession of the two automobiles. It sold one at public auction on March 16, 1955, for $570 and the other at private sale a week later for $250, leaving a deficiency of over $1,250. There is no contention that the bankrupt had any equity in the mortgaged automobiles, nor is there any issue as to the validity of the sale by the mortgagee.

The rule in New York is that on default the mortgagee under a chattel mortgage becomes the legal owner of the property with "absolute" title subject to redemption by the mortgagor and if he conducts a valid sale he thereby cuts off the equity of redemption.[17] It was also the established law of New York that after default the chattel mortgagor had no interest in the mortgaged property that could be sold on execution against him.[18] However, the latter rule has been modified by statute. Section 688 of the New York Civil Practice Act as amended in 1942[19] provides that the interest of

16. See cases cited in footnote 13, supra.

17. Manufacturers Trust Co. v. Stehle, 1 A.D.2d 471, 472, 151 N.Y.S.2d 384; Harrison v. Hall, 239 N.Y. 51, 52, 145 N.E. 737; Samuel Feldman Lumber Co., Inc., v. Buttiglione, Sup., 64 N.Y.S.2d 777, affirmed 271 App.Div. 968, 68 N.Y.S.2d 599; Prudential Ins. Co. v. McGoldrick, 256 App.Div. 205, 9 N.Y.S.2d 515, affirmed 281 N.Y. 595, 22 N.E.2d 166.

18. Leadbetter v. Leadbetter, 125 N.Y. 290, 26 N.E. 265; Hull v. Carnley, 11 N.Y. 501, 502; Manchester v. Tibbetts, 121 N.Y. 219, 223, 24 N.E. 304.

19. L.1942, ch. 287.

the chattel mortgagor may be levied upon and sold even after default but the sheriff may levy and sell under the amended section only when the mortgaged property is still in the possession of or under the control of the judgment debtor.[20] This section, however, does not avail petitioning creditors since the sheriff made no levy nor did he sell or purport to sell the interest of the alleged bankrupt in the automobiles.

Neither does § 679 of the Civil Practice Act aid the petitioning creditors. While it is true that under that section the property of the judgment debtor is bound from the time of the delivery of the execution to the sheriff,[21] the fact is that at that time Ideal, already in default, had no tangible interest in the automobiles that could be sold; its interest was nil and the judgment creditor did not acquire a lien.

Moreover, the rights of the general creditors were not and could not have been prejudiced by the delivery of the execution to the sheriff in the circumstances here shown since the judgment debtor had no interest in the automobiles to which a lien could attach. The Bankruptcy Act is concerned primarily with the equitable distribution of the assets of the estate to creditors; the estate in that sense was not effected by the delivery of the execution on December 30, 1954.[22]

Since Witkowski New York Agency, Inc., the judgment creditor, did not acquire a lien under New York law, there was no basis for holding an act of bankruptcy was committed for failure to vacate. The Referee's order in this respect should therefore be reversed.

However, since an act of bankruptcy was committed in connection with the purported assignment of the customs refund claims, the adjudication of bankruptcy may stand.

Settle order in accordance with the foregoing.

---

20. Hulse v. Dudley, 275 App.Div. 995, 91 N.Y.S.2d 329. See Eighth Annual Report of New York Judicial Council, 1942, p. 409 et seq.

21. See Meyerhardt v. Heinzelman, Sup., 71 N.Y.S.2d 692, affirmed 272 App.Div. 800, 71 N.Y.S.2d 925; Bartol v. Bennett, Sup., 56 N.Y.S.2d 314; 5 Carmody's New York Practice § 1612.

22. Cf. In re Flushing Queensboro Laundry, Inc., 2 Cir., 90 F.2d 601; In re Tele-Tone Radio Corp., D.C.D.N.J., 133 F. Supp. 739, 750; In re New Lots Sash & Door Corp., D.C.E.D.N.Y., 3 F.Supp. 570, 572.