In the Matter of TERRY CONTRACTING, INC., et al., Appellants,
v ARTHUR LEVITT, as Comptroller of the State of New
York, Respondent, and ROYAL STATE BANK OF NEW YORK,
Respondent.

Third Department, August 5, 1976

1

*Max E. Greenberg, Trayman, Harris, Cantor, Reiss & Blasky (Julius L. Shapira* of counsel), for appellants.

*Shea, Gould, Climenko, Kramer & Casey (Miles F. McDonald, James J.A. Gallagher* and *Ronald F. Saverin* of counsel), for Royal State Bank of New York, respondent.

GREENBLOTT, J.P. Petitioner Aetna Casualty and Surety Company (Aetna) issued a performance bond on behalf of Terry Contracting, Inc. (Terry) to the State of New York, in connection with a contract entered into between Terry and the State on March 19, 1959 for the construction of a portion of Prospect Expressway, Fort Hamilton Parkway Interchange, for the benefit of those performing labor for the project and supplying materials thereto. The bond provided that Aetna was "subrogated to all rights, privileges and properties of the principal(s) in said contract" and that Terry assign "any and all monies and properties that may be due and payable to" Terry "or that may thereafter become due and payable" to Terry "on account of [the] contract or on account of extra work or materials supplied in connection therewith".

Between April, 1959 and July, 1962, Terry performed services pursuant to said contract with the State, during which disputes arose between the parties. Terry contended that the

State had breached the contract in that it had compelled Terry to perform work over and beyond that specified by the contract, and that the State had delayed and disrupted Terry's performance of the contract, all of which greatly increased the cost of performance of the work through the employment of additional labor and the furnishing of additional materials and services. In an action for breach of contract following completion of the project, Terry recovered judgment against the State (*Terry Contr. v State of New York,* 42 AD2d 619), part of said sum representing damages for breach of contract and part representing disputed sums due Terry under the terms of the contract. At the commencement of this proceeding, after accumulation of interest and certain additional items the State stands liable in the sum of $322,636.08.

At some point in time Terry had borrowed $330,000 from the Royal State Bank of New York (to whom Chemical Bank is now the ultimate successor in interest), of which $234,654.55 plus interest remains unpaid. The notes evidencing this indebtedness were already past due as of September, 1961 when Terry, on July 11, 1962, gave Royal State Bank security therefor by assigning to it "the sum of $700,000 out of the proceeds of its claims against the State for damages sustained through the breaches of the terms of said Contract by the State of New York in compelling the performance of work above and beyond that specified by the terms of the contract, by compelling work to be performed [by] methods which differed from those on the Plans and Specifications, by delaying the work without cause, and by disrupting the work without cause, all of which required the employment of additional labor, the furnishing of additional materials and service without compensation, and for other breaches of said contract".

Aetna having paid $419,092.63 as surety for labor and materials, Terry and Aetna instituted this proceeding to compel the Comptroller to pay to Aetna the full amount of Terry's judgment against the State. Royal State Bank, by its successors, cross-petitioned, claiming a prior right, by virtue of the assignment of July 11, 1962, to the sum of $152,191.71, claimed to represent the amount awarded to Terry as damages for breach of contract. Finding the amount awarded for damages for breach of contract to be $98,346.55, Special Term (after certain deductions not challenged here) granted the cross petition to the extent of directing payment to Chemical

Bank in the sum of $96,041.11.* So much of the judgment as incorporates this directive is the subject of this appeal.

In holding with Royal and its successors, Special Term found that the assignment to Aetna did not include moneys awarded for breach of a contract, distinguishing moneys owed for work performed under the contract, and further held that since the claim for damages for breach of contract did not exist at the time of the assignment to Aetna, such an assignment could not adversely affect the interest of third-party creditors. Dealing first with the latter holding, we are of the view that the rule has been misapplied. Potential rights under an executory contract are assignable (see, generally, 3 NY Jur, Assignments, § 20), but it is claimed that the equitable lien of such an assignment is inferior to the rights of creditors. The case of *Matter of Black v Sully* (138 App Div 562) dealt with an assignment which had been enjoined, so that the assignment was in fraud of creditors; therefore, the case does not support the conclusion reached by Special Term or the contention of respondents. Special Term also relied on *Matter of Schaefer Brewing Co. v Amsterdam Tavern* (171 Misc 352). That case cites *Titusville Iron Co. v City of New York* (207 NY 203). There, however, a forfeiture rather than an assignment was involved, and title in the claimed property had passed to a receiver in bankruptcy before the forfeiture and before any transfer of possession. The facts in the present case are considerably different and thus distinguishable. Firstly, the assignment to the bank repeatedly acknowledges the assignment to Aetna and expressly subordinates the former's interest (although the scope of these provisions is here disputed). Secondly, and perhaps sufficient not only to distinguish the above-cited cases but also to warrant the application of a different rule is the fact that insofar as the State's breaches of contract resulted in increased payments for labor and materials, the payments required to be made by Aetna as surety were of necessity increased in the same amount. In such circumstances, we see no reason why the claim of Aetna should stand on a lesser footing than the claim of the bank as

---

* Terry originally claimed a total of $1,369,399.60 and its sixth cause of action, for breach of contract, sought recovery of $678,413.21. It is, therefore, apparent that the bank believed there would be a more than adequate fund to repay the loan after satisfaction of Aetna's claims. The bank's as well as Aetna's hopes were thwarted when Terry recovered less than one fourth of its total claim. Had Terry recovered even half of its claim, the present lawsuit would never have arisen.

creditor. Furthermore, as is evident from repeated references in the bank's assignment, the assignment to Royal was taken with actual knowledge of the assignment to Aetna.

The priority of the claims, therefore, must be determined by the terms of the assignments. As previously noted, Terry assigned to Aetna without restriction or limitation, "any and all monies * * * that may be * * * or * * * become * * * payable * * * on account of [the] contract or on account of extra work or materials supplied in connection therewith". The basis for Terry's claim against the State on its sixth cause of action (which resulted in the award which is the subject of the present dispute) was that the State, by interference causing delays in Terry's performance, had increased Terry's costs for labor, materials, and the like. These increased costs were thus incurred so as to enable Terry to complete the work for which it had contracted. We fail to see how payments made therefor, merely because they are denominated damages for breach of contract, can be regarded as other than payments "on account of [the] contract" or at the very least as payments "on account of extra work or materials supplied in connection therewith."

The mere fact the bank was subsequently assigned *only* an interest in sums as might be awarded as damages for breach of contract does not of itself indicate that such sums were intended to be excluded from Aetna's assignment, and in this case the bank's assignment by its own terms clearly negates such a conclusion. That document declares:

"WHEREAS, all moneys earned under said contract, * * * and any claims for damages arising out of the breaches of the terms of said contract by the State of New York * * * are trust funds for the payment of all bills for labor and materials incurred in the work provided for in said contract, and for the payment of the claims of the sureties for moneys advanced or paid or which may hereafter be advanced or paid for payrolls and bills for labor and materials, or for which they may become liable as sureties on the contracts bonded by them, and said The AEtna Casualty and Surety Company and [another] have a prior lien on any and all moneys due and to become due and payable on account of said contract by virtue of [the prior assignment to AEtna] * * *

Now, THEREFORE, * * *

"This assignment [to Royal State Bank] is subject and subordinate to the prior claims * * * of the Aetna Casualty

and Surety Company * * * and all such prior claims shall take precedence over this assignment."

The following paragraph declares in specific terms that the assignment to the bank shall be only of moneys due on account of breach of contract claims "after all prior claims for labor and materials, and the prior claims of the AEtna Casualty and Surety Company * * * have been satisfied".

In taking an assignment limited to only sums due as damages for breaches of contract, the bank did not thereby receive an exclusive interest therein. Clearly, if Aetna had no interest in the breach of contract claim, there would have been no need for repeated reference to the priority of Aetna's claim, for the claims of Aetna and the bank would not have been in conflict. To hold that the phrase "moneys due * * * and payable on account of said contract" must be read to exclude breach of contract claims would render numerous provisions in both assignments devoid of meaning. Such a construction, therefore, cannot be favored. Had the parties intended to limit Aetna's claims to payments of the contract price, clear and direct language to that effect could have been employed, and most if not all of the above-quoted language, as previously noted, could have been omitted.

Special Term found that Aetna's assignment did not include an interest in payment of damages for breach of contract by construing the agreement strictly against Aetna as drafter thereof. However, this rule of construction cannot be invoked to give to the words employed a strained and unreasonable meaning. We, therefore, conclude that Aetna clearly and satisfactorily expressed its intent that its assignment include damages for breaches of contract and that the bank, with actual notice of that assignment, knowingly took a secondary interest in those damage claims against the proceeds of which it could proceed only when Aetna's prior claims had been fully satisfied.

The judgment should be modified, on the law and the facts, so as to delete the first, second, fifth and sixth decretal paragraphs thereof; the third decretal paragraph should be modified so as to grant the petition of Terry Contracting, Inc., Aetna Casualty and Surety Co. and American Employer's Insurance Co. to the extent of $230,205.25 inclusive of interest, and, as so modified, affirmed, with costs to appellants filing briefs.

REYNOLDS, J. (dissenting). It is our view that the result reached at Special Term was legally and equitably sound. The original order was changed by stipulation between the parties to give Aetna about $56,000 which was not considered as arising out of the breach of contract suit, reducing the bank's judgment to about $96,000.

When the assignment to the bank as collateral was prepared, it was prepared at a joint meeting attended by Terry, Aetna as surety (Beasley) and the representative of Royal-Chemical. This assignment was described as ambiguous by William Rehfuss of the Comptroller's office when the Aetna attorneys attempted to have him issue them a check for the entire amount of the breach of contract suit by *Terry v State of New York.* Mr. Rehfuss quoted the language of the assignment to Royal in paragraph 2 on page 4: *"An assignment only of the moneys to become due on account of the claims against the State for damages sustained through breaches of the terms of said contract."* (Emphasis added.) It is claimed and *not denied* that Beasley of Aetna prepared, drew and approved this assignment. The letter from Beasley of July 18, 1962 to his superior confirms this. For Aetna to now claim that there can be no distinction *between money due under the contract and damages incidental to the contract* (damages for breach of contract) when in fact Aetna was the real beneficiary of the $330,000 loaned by the bank to Terry and drew the collateral assignment, is difficult to understand or to support.

This construction contract was executed in 1959; was to be completed in 1960, however, it was not completed until 1964 and accepted in 1965. It developed apparently from the start that Terry and his associates were having problems in successfully completing it and in 1961 it was apparent that Terry was in real trouble and the surety knew it. Appellants point to a letter in January, 1962 from Terry to the surety that it was out of funds. It is obvious that the money loaned to Terry by the bank was used in this contract whether the actual transfer of the funds was in 1961 or 1962. The date of the transfer is immaterial. Even the appellants admit that if the money borrowed from the bank was used in the performance of the contract that the lender is equitably entitled to the benefit of the proceeds of the assignment, but they say that the agreement and assignment between Terry and Royal is silent as to the purpose of the loan and the bank did not prove the money was used to further the contract.

It is obvious from the record that the Aetna knew that the money was used in the contract as contended by Royal. If this were not so, how simple it would have been for the surety on this proceeding to produce an affidavit from Terry, their plaintiff, that the money for the loan did not go into the performance of the contract instead of weak and evasive positions regarding same. And, if the money received by Terry from the bank were not used in the performance of the contract they would have never entered into and prepared the assignment to the Royal Bank. It is significant that the matter of the Royal assignment was discussed for some period before the actual execution of same. While Beasley of Aetna was engaged in the discussions preparatory to the Royal assignment he attempted to file (June, 1962), the application for the bond which contained the original assignment of Terry to the surety which was refused by the Comptroller as defective and later withdrawn on June 28, 1962. His letter to his superior Halley, after the assignment to Royal of the proceeds of the breaches of contract, states nothing about the fact that the bank's loan was not used in the performance of the work of the contract, but on the contrary states: "Frankly I did not believe that the Bank would accept an assignment such as the one I drafted". (Referring to the devious clauses inserted.) We say his actions admit the legality and equity of the bank's claim and his insertion of priorities show that. Special Term did not commit error in strictly construing the assignments against Aetna. The language of both Aetna assignment and the Royal-Chemical assignment show that Royal-Chemical alone was assigned damages arising out of breach of the contract. The language of the Royal-Chemical assignment reads as follows:

"Now, THEREFORE, in consideration of the sum of $1.00 and other good and valuable considerations in hand paid by Royal State Bank of New York, a New York banking corporation, having its principal office at 245 Fifth Avenue, New York 16, New York, Terry Contracting, Inc. does hereby assign to the said Royal State Bank the sum of $700,000 out of the proceeds of its claims against the State of New York for damages sustained through the breaches of the terms of said contract by the State of New York in compelling the performance of work above and beyond that specified by the terms of the contract, by compelling work to be performed methods which differed from those shown on the Plans and Specifications, by

delaying the work without cause, and by disrupting the work without cause, all of which required the employment of additional labor, the furnishing of additional materials and service without compensation, and for other breaches of said contract which resulted in damages, and referred to hereinabove. * * * it being the intention of the parties that this shall be an assignment only of the moneys to become due on account of the claims against the State of New York for damages sustained through the breaches of the terms of said contract * * *. Terry Contracting, Inc. hereby, for itself, its successors, and assigns, convenants with the said Royal State Bank as follows: * * * That it will not hereafter collect or receive any part of the moneys hereby assigned, or intended to be assigned, except for the benenfit of said Royal State Bank."

Special Term in its decision was correct when it stated in connection with the assignment from Terry to Aetna (1959): "Certainly there is some merit to the argument that the Sureties' assignment must be construed strictly against the draftor, Aetna, and in light of the circumstances which existed at the time. When so construed it can not be said to include an assignment of damages for a breach of a contract as yet not even awarded. * * * Moreover, while a claim not as yet in existence may validly be assigned and is inforceable [sic] in equity as between the assignor and the assignee, such an assignment can not operate to effect adversely the interests of others."

We feel that the majority has made conclusions of law and fact not justified by this record. The judgment obtained in the action by Terry against the State arose in part out of the breach of contract by the State of New York and does not represent moneys due Terry for work, labor or services performed pursuant to the contract allegedly assigned to Aetna. The subrogation rights raised by appellants in their brief that they are subrogees or lienors; and subrogees of subcontractors and suppliers; and subrogees of trust beneficiaries and the claim that this article 78 proceeding can be construed as an action to settle a trustee's account are without merit.

We are faced herein with a determination of the intent of the parties in this loan and collateral assignment. It is our view that Special Term was correct in finding that it was the intent of the parties to assign the damages for the breaches of contract to Royal-Chemical and that legally and equitably the bank is entitled to the judgment as rendered below. We also

find that under the facts Aetna is estopped from taking the position it has taken and we would affirm the judgment at Special Term.

SWEENEY and MAIN, JJ., concur with GREENBLOTT, J.P.: HERLIHY and REYNOLDS, JJ., dissent and vote to affirm in an opinion by REYNOLDS, J.

Judgment modified, on the law and the facts, so as to delete the first, second, fifth and sixth decretal paragraphs thereof; third decretal paragraph modified so as to grant the petition of Terry Contracting, Inc., Aetna Casualty and Surety Co. and American Employer's Insurance Co. to the extent of $230,205.25 inclusive of interest, and, as so modified, affirmed, with costs to appellants filing briefs.